02:42:16    1                    **UNITED STATES DISTRICT COURT**

            2                    **CENTRAL DISTRICT OF CALIFORNIA**

            3                 **SOUTHERN DIVISION AT SANTA ANA**

            4          **HONORABLE JOSEPHINE STATON TUCKER, JUDGE PRESIDING**

02:42:16    5                          **CERTIFIED TRANSCRIPT**

            6   ST. LUCY'S PRIORY OF GLENDORA,      )
                INC., ET AL.,                       )
            7                                       )
                              PLAINTIFFS,           )
            8                                       )
                         VS.                        ) SACV NO. 13-932-JST
            9                                       )
                CALIFORNIA INTERSCHOLASTIC          )
02:42:16   10   FEDERATION SOUTHERN SECTION, ET     )
                AL.,                                )
           11                                       )
                              DEFENDANTS.           )
           12   _____)

           13

           14

02:42:16   15                REPORTER'S TRANSCRIPT OF PROCEEDINGS

           16                      SANTA ANA, CALIFORNIA

           17                   FRIDAY, SEPTEMBER 20, 2013

           18                          2:30 P.M.

           19

02:42:16   20

           21                 **DEBORAH D. PARKER, CSR 10342**
                              **OFFICIAL COURT REPORTER**
           22              **UNITED STATES DISTRICT COURT**
                              **411 WEST FOURTH STREET**
           23                       **SUITE 1-053**
                          **SANTA ANA, CALIFORNIA 92701**
           24                     **(657) 229-4305**
02:42:16   25                 **TRANSCRIPTS@DDPARKER.COM**

                    *DEBORAH D. PARKER, U.S. COURT REPORTER*

```
02:42:16   1    APPEARANCES OF COUNSEL:

           2         FOR THE PLAINTIFFS, ST. LUCY'S PRIORY OF GLENDORA,
                     INC., ET AL.:

           3
                                   ROBERT J. PRATA
           4                       PRATA & DALEY, LLP
                                   515 SOUTH FIGUEROA STREET
02:42:16   5                       SUITE 1515
                                   LOS ANGELES, CALIFORNIA 90071
           6                       (213) 622-5600

           7
                     FOR THE DEFENDANTS, CALIFORNIA INTERSCHOLASTIC
           8         FEDERATION SOUTHERN SECTION, ET AL.:

           9                       ANDREA F. OXMAN
                                   KLINEDINST
02:42:16  10                       777 S. FIGUEROA
                                   SUITE 2800
          11                       LOS ANGELES, CALIFORNIA 90017
                                   (213) 406-1100
          12

          13                       ERNEST L. WEISS
                                   KLINEDINST
          14                       5 HUTTON CENTRE DRIVE
                                   SUITE 1000
02:42:16  15                       SANTA ANA, CALIFORNIA 92707
                                   (714) 542-1800
          16

          17                       RONALD J. SCHOLAR
                                   KRONICK, MOSKOVITZ, TIEDEMANN &
          18                       GIRARD
                                   400 CAPITOL MALL
          19                       27TH FLOOR
                                   SACRAMENTO, CALIFORNIA 95814
02:42:16  20                       (916) 321-4500

          21

          22

          23

          24

          25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

02:42:16  1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3          **SOUTHERN DIVISION AT SANTA ANA**

4      **HONORABLE JOSEPHINE STATON TUCKER, JUDGE PRESIDING**

02:42:16  5                    **CERTIFIED TRANSCRIPT**

6   ARCHDIOCESE OF LOS ANGELES          )
    EDUCATION AND WELFARE CORPORATION, )
7                                       )
                   PLAINTIFF,           )
8                                       )
            VS.                         ) SACV NO. SACV 13-934-JST
9                                       )
    CALIFORNIA INTERSCHOLASTIC          )
02:42:16 10  FEDERATION SOUTHERN SECTION, ET    )
    AL.,                                )
11                                      )
                   DEFENDANTS.          )
12   _____)

13

14

02:42:16 15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  SANTA ANA, CALIFORNIA

17               FRIDAY, SEPTEMBER 20, 2013

18                      2:30 P.M.

19

02:42:16 20

21

22          **DEBORAH D. PARKER, CSR 10342**
            **OFFICIAL COURT REPORTER**
            **UNITED STATES DISTRICT COURT**
23          **411 WEST FOURTH STREET**
            **SUITE 1-053**
24          **SANTA ANA, CALIFORNIA 92701**
            **(657) 229-4305**
02:42:16 25          **TRANSCRIPTS@DDPARKER.COM**

*DEBORAH D. PARKER, U.S. COURT REPORTER*

4

```
02:42:16   1   APPEARANCES OF COUNSEL:

           2        FOR THE PLAINTIFF, ARCHDIOCESE OF LOS ANGELES
                    EDUCATION AND WELFARE CORPORATION:
           3
                                  MICHELE B. FRIEND
           4                      KNEAFSEY & FRIEND
                                  800 WILSHIRE BOULEVARD
02:42:16   5                      SUITE 710
                                  LOS ANGELES, CALIFORNIA 90017
           6                      (213) 892-1200

           7
                                  ROBERT J. PRATA
           8                      PRATA & DALEY, LLP
                                  515 SOUTH FIGUEROA STREET
           9                      SUITE 1515
                                  LOS ANGELES, CALIFORNIA 90071
02:42:16  10                      (213) 622-5600

          11
                    FOR THE DEFENDANTS, CALIFORNIA INTERSCHOLASTIC
          12        FEDERATION SOUTHERN SECTION, ET AL.:

          13                      ANDREA F. OXMAN
                                  KLINEDINST
          14                      777 S. FIGUEROA STREET
                                  SUITE 2800
02:42:16  15                      LOS ANGELES, CALIFORNIA 90017
                                  (213) 406-1100
          16

          17                      ERNEST L. WEISS
                                  KLINEDINST
          18                      5 HUTTON CENTRE DRIVE
                                  SUITE 1000
          19                      SANTA ANA, CALIFORNIA 92707
                                  (714) 542-1800
02:42:16  20

          21                      RONALD J. SCHOLAR
                                  KRONICK, MOSKOVITZ, TIEDEMANN &
          22                      GIRARD
                                  400 CAPITOL MALL
          23                      27TH FLOOR
                                  SACRAMENTO, CALIFORNIA 95814
          24                      (916) 321-4500

          25
```

02:42:16   1           **UNITED STATES DISTRICT COURT**

         2          **CENTRAL DISTRICT OF CALIFORNIA**

         3         **SOUTHERN DIVISION AT SANTA ANA**

         4     **HONORABLE JOSEPHINE STATON TUCKER, JUDGE PRESIDING**

02:42:16   5                        **CERTIFIED TRANSCRIPT**

         6  OAKS CHRISTIAN SCHOOL,              )
                                               )
         7              PLAINTIFF,             )
                                               )
         8            VS.                       ) SACV NO. 13-940-JST
                                               )
         9  CALIFORNIA INTERSCHOLASTIC          )
            FEDERATION SOUTHERN SECTION, ET     )
02:42:16  10  AL.,                              )
                                               )
        11              DEFENDANTS.             )
            _____)
        12

        13

        14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

02:42:16  15                 SANTA ANA, CALIFORNIA

        16              FRIDAY, SEPTEMBER 20, 2013

        17                      2:30 P.M.

        18

        19

02:42:16  20          **DEBORAH D. PARKER, CSR 10342**
                         **OFFICIAL COURT REPORTER**
        21            **UNITED STATES DISTRICT COURT**
                        **411 WEST FOURTH STREET**
        22                   **SUITE 1-053**
                      **SANTA ANA, CALIFORNIA 92701**
        23                 **(657) 229-4305**
                      **TRANSCRIPTS@DDPARKER.COM**
        24

        25

```
02:42:16   1   APPEARANCES OF COUNSEL:

           2        FOR THE PLAINTIFF, OAKS CHRISTIAN SCHOOL:

           3                      ANIL J. ANTONY
                                  SCADDEN, ARPS, SLATE, MEAGHER &
           4                      FLOM, LLP
                                  300 SOUTH GRAND AVENUE
02:42:16   5                      LOS ANGELES, CALIFORNIA 90071
                                  (213) 687-5427

           6

           7                      JACK DI CANIO
                                  SKADDEN, ARPS, SLATE, MEAGHER &
           8                      FLOM, LLP
                                  525 UNIVERSITY AVENUE
           9                      PALO ALTO, CALIFORNIA 94301
                                  (650) 470-4660
02:42:16  10

          11

          12        FOR THE DEFENDANTS, CALIFORNIA INTERSCHOLASTIC
                    FEDERATION SOUTHERN SECTION, ET AL.:

          13                      ANDREA F. OXMAN
                                  KLINEDINST
          14                      777 S. FIGUEROA STREET
                                  SUITE 2800
02:42:16  15                      LOS ANGELES, CALIFORNIA 90017
                                  (213) 406-1100

          16

          17                      ERNEST L. WEISS
                                  KLINEDINST
          18                      5 HUTTON CENTRE DRIVE
                                  SUITE 1000
          19                      SANTA ANA, CALIFORNIA 92707
                                  (714) 542-1800
02:42:16  20

          21                      RONALD J. SCHOLAR
                                  KRONICK, MOSKOVITZ, TIEDEMANN &
          22                      GIRARD
                                  400 CAPITOL MALL
          23                      27TH FLOOR
                                  SACRAMENTO, CALIFORNIA 95814
          24                      (916) 321-4500

02:42:16  25
```

02:42:16 | 1 | **SANTA ANA, CALIFORNIA; FRIDAY, SEPTEMBER 20, 2013; 2:30 P.M.**

2 | THE CLERK:  CALLING CALENDAR ITEM NO. 5,

3 | SACV 13-932-JST, ST. LUCY'S PRIORY OF GLENDORA, INC., ET AL.

4 | VERSUS CALIFORNIA INTERSCHOLASTIC FEDERATION SOUTHERN

02:42:24 | 5 | SECTION, ET AL.

6 | CALLING CALENDAR ITEM NO. 6, SACV 13-934-JST,

7 | ARCHDIOCESE OF LOS ANGELES EDUCATION AND WELFARE CORPORATION

8 | VERSUS CALIFORNIA INTERSCHOLASTIC FEDERATION SOUTHERN

9 | SECTION ("CIF-SS").

02:42:42 | 10 | CALLING CALENDAR ITEM NO. 7, SACV 13-940-JST, OAKS

11 | CHRISTIAN SCHOOL VERSUS CALIFORNIA INTERSCHOLASTIC

12 | FEDERATION SOUTHERN SECTION, ET AL.

13 | COUNSEL, YOUR APPEARANCES, PLEASE.

14 | MR. DI CANIO:  GOOD AFTERNOON, YOUR HONOR.

02:42:56 | 15 | JACK DICANIO AND ANIL ANTONY, ON BEHALF OF OAKS

16 | CHRISTIAN.

17 | THE COURT:  GOOD AFTERNOON.

18 | MS. FRIEND:  GOOD AFTERNOON, YOUR HONOR.

19 | MICHELE FRIEND, ON BEHALF OF THE ARCHDIOCESE OF

02:43:07 | 20 | LOS ANGELES, EDUCATION AND WELFARE CORPORATION IN ITS OWN

21 | BEHALF AND ON BEHALF OF THE BONAVENTURE HIGH SCHOOL AND

22 | DAMION SCHOOL.

23 | THE COURT:  GOOD AFTERNOON.

24 | MR. PRATA:  ROBERT PRATA, ON BEHALF OF ST. LUCY'S

02:43:18 | 25 | PRIORY HIGH SCHOOL, AS WELL AS THE ARCHDIOCESE.

02:43:20  1              THE COURT:  GOOD AFTERNOON.

2              MS. OXMAN:  GOOD AFTERNOON, YOUR HONOR.

3              ANDREA OXMAN, ON BEHALF OF DEFENDANT CIS SOUTHERN

4    SECTION AND ROBERT L. WYGOT.

02:43:30  5              MR. WEISS:  GOOD AFTERNOON, YOUR HONOR.

6              ERNEST WEISS, ALSO APPEARING FOR DEFENDANT CIS

7    SOUTHERN SECTION AND ROBERT WYGOT.

8              MR. SCHOLAR:  GOOD AFTERNOON, YOUR HONOR.

9              RONALD SCHOLAR, ON BEHALF OF THE CALIFORNIA

02:43:44 10    INTERSCHOLASTIC FEDERATION.

11              THE COURT:  GOOD AFTERNOON TO YOU AS WELL.

12              WE'RE HERE ON DEFENDANTS' MOTIONS TO DISMISS.  I

13    HAVE SET ALL OF THEM FOR 2:30 FOR OBVIOUS REASONS, AND I

14    DON'T SET HEARINGS ON MOTIONS UNLESS I HAVE QUESTIONS, AND

02:44:01 15    SO I WILL HAVE SOME QUESTIONS.  BUT BEFORE I LAUNCH INTO

16    THEM, I WILL GIVE YOU AN OPPORTUNITY TO BE HEARD.  KEEP IN

17    MIND I HAVE READ THE PAPERS.

18              SO WITH THAT, SINCE THIS IS DEFENDANTS' MOTION,

19    I'LL HEAR FROM DEFENDANTS FIRST.

02:44:20 20              MS. OXMAN:  YOUR HONOR, BRIEFLY.

21              THIS CASE SHOULD NOT BE BEFORE THE COURT AS TO

22    DEFENDANTS CIS SOUTHERN SECTION AND ROBERT L. WYGOD.  THE

23    BRIEFING, WE FEEL, IS VERY COMPREHENSIVE, AND WE'D BE HAPPY

24    TO ANSWER ANY QUESTIONS THE COURT MAY HAVE.  BUT THIS IS NOT

02:44:33 25    A CASE ABOUT RELIGIOUS DISCRIMINATION.  IT IS NOT A CASE

*DEBORAH D. PARKER, U.S. COURT REPORTER*

02:44:37   1   ABOUT SEGREGATION.  IT'S ABOUT PLAINTIFF'S DISAGREEMENT WITH

           2   THE DECISION AS TO WHERE THEY ARE GOING TO PLAY SPORTS FOR

           3   THE 2014 TO 2018 SCHOOL SPORT CYCLE.

           4          AND WITH THAT, I'LL LET PLAINTIFF RESPOND AND

02:44:51   5   WE'LL ADDRESS YOUR QUESTIONS AS WE GO FORWARD.

           6          THE COURT:  ALL RIGHT.  I HAVE ONE QUESTION FOR

           7   YOU.

           8          MS. OXMAN:  YES.

           9          THE COURT:  AND THAT IS, ON THE ISSUE OF

02:45:00  10   PROCEDURAL DUE PROCESS, DO YOU BELIEVE THAT THAT THERE WAS A

          11   NEUTRAL FINAL APPEALS BODY?  AND DO YOU BELIEVE THAT IF --

          12   WHETHER THERE WAS OR NOT, THAT ONE IS REQUIRED HERE?

          13          MS. OXMAN:  I THINK THAT WITH --

          14          THE COURT:  I'M GOING ON START OFF WITH THIS:  MY

02:45:20  15   TENTATIVE RULING IS TO REJECT YOUR CLAIM THAT THE BLUE BOOK

          16   WAIVER IS BASIS FOR DISMISSING THE ENTIRE LAWSUIT.  ALL

          17   RIGHT.  SO WE'LL START WITH THAT PREMISE.  WE'RE GOING TO BE

          18   DEALING WITH THE INDIVIDUAL CLAIMS THAT YOU HAVE ADDRESSED

          19   IN YOUR MOTION, THOSE PARTICULAR CLAIMS FOR RELIEF.  SO NOW

02:45:41  20   I'M FOCUSING -- I JUST HAD THAT QUESTION -- I PROBABLY HAVE

          21   MORE QUESTIONS FOR THE PLAINTIFFS HERE, BUT I HAVE THAT

          22   QUESTION FOR YOU.

          23          MS. OXMAN:  UNDERSTOOD, YOUR HONOR.

          24          AND I WOULD JUST ADD THAT TO THE EXTENT THE COURT

02:45:53  25   HAS CONCERNS ABOUT THE WAIVER ARGUMENT, IF THERE ARE

02:45:56  1   SPECIFIC CONCERNS -- THERE WERE A NUMBER OF ISSUES ADDRESSED

2   IN THE BRIEF AS TO WAIVER, WHETHER IT WAS KNOWING AND

3   VOLUNTARY, THE PUBLIC POLICY -- WE WOULD CERTAINLY LIKE TO

4   ADDRESS ANY CONCERNS AS TO THOSE.  I'M HAPPY TO ADDRESS THE

02:46:09  5   DUE PROCESS ARGUMENT AS WELL.

6        WITH RESPECT TO THE DUE PROCESS ARGUMENT, I THINK

7   THAT -- LOOKING TO THE ALLEGATIONS OF THE COMPLAINT,

8   PLAINTIFFS ARE REQUIRED TO STATE A STATUTORY INTEREST, AND

9   THEY HAVEN'T ARTICULATED THAT.  THE DUE PROCESS THAT'S

02:46:27 10   REQUIRED WILL DEPEND ON THE STATUTORY INTEREST.  BUT THERE

11   IS NO CLAIM AS FOR A DUE PROCESS, UNLESS THAT STATUTORY

12   INTEREST IS IDENTIFIED, AND THAT'S WHAT THE COURT MADE CLEAR

13   IN RYAN.

14        SO WITH RESPECT TO YOUR QUESTION AS TO WHETHER A

02:46:39 15   NEUTRAL FINALS APPEAL BODY WAS PRESENT ABSENT THE

16   IDENTIFICATION --

17        THE COURT:  IS THAT THE STATUTORY INTEREST IN AND

18   OF ITSELF?  A NEUTRAL FINAL APPEALS BODY, CAN THAT BE A

19   STATUTORY INTEREST?  IT'S LISTED IN THE STATUTE ITSELF.

02:46:52 20        MS. OXMAN:  UNDERSTOOD, YOUR HONOR.

21        AND THAT'S WHAT PLAINTIFFS CONTEND IN THEIR

22   OPPOSITION.  BUT AS SET FORTH IN OUR REPLY, THAT ARGUMENT

23   DOESN'T CARRY THE DAY WITH RESPECT TO DEFENDANT CIS SOUTHERN

24   SECTION.  THAT STATUTE DOES NOT APPLY TO CIS SOUTHERN

02:47:08 25   SECTION AND, ADDITIONALLY, IT'S AN ENABLING STATUTE WHICH

02:47:10  1   THE RYAN COURT EXPRESSLY HELD IS INSUFFICIENT TO CONFER THAT

       2   STATUTORY INTEREST THAT WOULD THEN SUPPORT A DUE PROCESS

       3   CLAIM.

       4          THE COURT:  AND I THINK YOU'VE ADDRESSED THAT IN

02:47:20  5   YOUR PAPERS, SO I DON'T KNOW THAT THERE IS ANYTHING FURTHER

       6   I NEED TO ASK AT THIS TIME ON THAT.

       7          LET ME GO AHEAD AND HAVE YOU TAKE A SEAT.  LET ME

       8   ASK SOME QUESTIONS OF THE PLAINTIFFS AND IF -- WHAT I WOULD

       9   LIKE IS FOR -- YES, COUNSEL -- AND YOU ARE COUNSEL FOR?

02:47:37 10          MR. DI CANIO:  OAKS CHRISTIAN, YOUR HONOR.

      11          THE COURT:  OAKS CHRISTIAN.  ALL RIGHT.  SO YOU

      12   HAVE A SLIGHTLY DIFFERENT SET OF CLAIMS.

      13          MR. DI CANIO:  THAT'S CORRECT, YOUR HONOR.

      14          THE COURT:  I THINK YOU HAVE THE FREE -- THE

02:47:45 15   ASSOCIATION CLAIM.

      16          MR. DI CANIO:  YES, YOUR HONOR.

      17          THE COURT:  AND NOT A FREE EXERCISE CLAIM?

      18          MR. DI CANIO:  CORRECT, YOUR HONOR.

      19          THE COURT:  ALL RIGHT.  SO I CAN IGNORE WHAT WAS

02:47:51 20   DRAFTED ABOUT THE FREE EXERCISE CLAIM BEFORE YOU FILED YOUR

      21   OPPOSITION SAYING WE'RE NOT MAKING THAT CLAIM.

      22          MR. DI CANIO:  YES, YOUR HONOR.

      23          THE COURT:  ALL RIGHT.  SO I WON'T ASK YOU ANY

      24   FREE EXPRESSION QUESTIONS.

02:48:04 25          MR. DI CANIO:  BEFORE YOU ASK QUESTIONS, CAN I

*DEBORAH D. PARKER, U.S. COURT REPORTER*

| | |
|---|---|
| 02:48:06 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 02:48:13 | 5 |

02:48:06  1    JUST GIVE MY GENERAL STATEMENT?

2              THE COURT:  YES.  YOU CERTAINLY MAY.

3              MR. DI CANIO:  AND I AGREE WITH COUNSEL, THERE'S

4    NOT A LOT THAT WE AGREE ON, OBVIOUSLY, FROM THE BRIEFING BUT

02:48:13  5    I DO AGREE THAT EVERYTHING WAS VERY EXHAUSTIVELY BRIEFED.

6    BUT I WANT TO FOCUS ON ONE THING SHE SAID; AND THAT IS, THAT

7    WE JUST DISAGREE ABOUT WHERE WE'RE GOING TO PLAY SPORTS.

8    THAT IS SO MUCH MORE IMPORTANT TO OUR SCHOOL THAN SHE JUST

9    MADE IT OUT TO BE.  HERE'S THE REASON WHY:  THE BURDENS THAT

02:48:32  10   THIS AREA PLACEMENT ARE GOING TO PUT ON OUR SCHOOLS ARE

11   GOING TO THREATEN OUR ENROLLMENT.  THEY'RE GOING TO COST

12   SIGNIFICANT SUMS OF MONEY IN TERMS OF TRANSPORTATION.  IT'S

13   GOING TO CAUSE SIGNIFICANT AMOUNT OF TIME FOR KIDS TO BE OUT

14   OF SCHOOL TO BE ABLE TO MAKE THEIR GAMES.  AND LASTLY, THIS

02:48:50  15   IS ALL ABOUT THE BEST INTEREST OF THE KIDS.

16             YOU KNOW, WHEN I THINK ABOUT ALL OF OUR SCHOOLS

17   HERE -- I DON'T WANT TO JUST TALK ABOUT OAKS CHRISTIAN -- I

18   LOOK AT OAKS CHRISTIAN.  WE HAVE A NEIGHBORHOOD OF SCHOOLS

19   ALL AROUND US AND THAT'S WHERE WE WANT TO PLAY.  INSTEAD,

02:49:03  20   THEY'RE MAKING US TRAVEL TWICE THE DISTANCE TO THE PAROCHIAL

21   AREA WHERE WE HAVE TO TRAVEL ACROSS THE 405 AND THE 101.

22   NOW, FOR FOOTBALL, MAYBE NOT SO BIG OF A DEAL BECAUSE THOSE

23   GAMES ARE ON FRIDAY NIGHT.  BUT FOR GIRLS' VOLLEYBALL, BOYS'

24   TENNIS, ALL OF THE OTHER SPORTS THAT WE PLAY IN THAT START

02:49:20  25   AT 3:00 AND 4:00 O'CLOCK IN THE AFTERNOON, THAT'S GOING TO

02:49:23   1    REQUIRE US TO TAKE OUR KIDS OUT OF SCHOOL.

           2           THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  IT

           3    CAME THROUGH VERY WELL IN YOUR BRIEF.  AND ANYONE WITH KIDS

           4    IN HIGH SCHOOL, OR -- YOU KNOW, WILL RECOGNIZE THAT.

02:49:35   5    HOWEVER, YOU'RE IN FEDERAL COURT AND YOU'RE MAKING FIRST

           6    AMENDMENT CLAIMS.  AND SO, THE FACT THAT THERE ARE

           7    TREMENDOUS TRANSPORTATION DIFFICULTIES IN AND OF THEMSELVES,

           8    BURDENS ON THE KIDS, ISSUES WITH GETTING THROUGH THEIR

           9    CLASSES AND THEN GETTING TO SPORTS ON TIME, YOU NEED TO LINK

02:49:54  10    THAT UP FOR ME TO A CLAIM.

          11           SO, FOR EXAMPLE, IN THE ESTABLISHMENT CLAUSE,

          12    UNDER THE *AMERICAN FAMILY* CASE, IF THERE IS ANY PLAUSIBLE

          13    SECULAR PURPOSE THAT SUFFICES, THEN THAT SUFFICES TO SURVIVE

          14    THAT PARTICULAR PRONG.  WE HAVE THE PREDOMINANT PURPOSE, THE

02:50:15  15    PRIMARY EFFECT AND EXCESSIVE ENTANGLEMENT.  THOSE ARE THE

          16    PRONGS WE HAVE TO LOOK AT.

          17           SO, FIRST OF ALL, AS TO PREDOMINANT PURPOSE, THE

          18    *AMERICAN FAMILY* CASE TELLS US THAT ANY SECULAR PURPOSE IS

          19    SUFFICIENT IF IT'S PLAUSIBLE.  AND SO, WHAT I LOOK AT IS, I

02:50:32  20    LOOK AT THE COMPLAINT THAT WAS FILED IN THIS CASE.  I'M

          21    LOOKING ACTUALLY AT THE OAKS CHRISTIAN COMPLAINT, AND I'M

          22    LOOKING AT EXHIBIT 4 THAT'S ATTACHED TO THE COMPLAINT, AND

          23    I'M LOOKING AT PAGE 3 OF EXHIBIT 4.  AND PAGE 3 OF EXHIBIT 4

          24    SAYS -- AND THIS IS A LETTER FROM THE SCHOOL TO THE

02:50:51  25    EXECUTIVE COMMITTEE, AND IT STATES:  *IT APPEARS TO US THAT*

02:50:55   1   *THE DECISION TO MOVE OAKS CHRISTIAN TO THE PAROCHIAL AREA IS*

2   *BASED LARGELY ON OAKS CHRISTIAN'S PERFORMANCE IN ONE SPORT*

3   *FOOTBALL, AT THE EXPENSE OF MORE THAN 40 ATHLETIC TEAMS AND*

4   *HUNDREDS OF STUDENT ATHLETES WHO PARTICIPANT IN OTHER SPORTS*

02:51:09   5   *AT OAKS CHRISTIAN.*

6         ALL RIGHT.  SO I UNDERSTAND WHY YOU MIGHT SAY

7   THAT, THAT IT MIGHT MAKE NO SENSE TO MAKE A GEOGRAPHIC

8   CHANGE BASED ON ONE SPORT.  BUT ISN'T THAT IN AND OF ITSELF

9   AN ACKNOWLEDGMENT BY THE SCHOOL THAT HAS A SECULAR PURPOSE;

02:51:31  10   IN OTHER WORDS, THAT -- AND THAT THAT IS BASED ON

11   COMPETITIVENESS?

12         SO THAT'S ONE PRONG.  DON'T YOU AT LEAST FALL ON

13   THAT ONE?  YOU HAVE OTHER PRONGS TO GET TO, BUT --

14         MR. DI CANIO:  OKAY.  SO, YOUR HONOR, CAN I JUST

02:51:48  15   MAYBE TAKE A STEP BACK AND AGREE WITH YOU THAT, MERELY, THE

16   HARDSHIP THAT'S BEEN IMPOSED ON US IS NOT REALLY WHY WE'RE

17   IN COURT.  WE'RE IN COURT BECAUSE WE'VE ASSERTED VALID

18   CLAIMS, SO LET ME TAKE THE LEMON TEST FIRST.

19         YOUR HONOR, I THINK, RELIED ON *AMERICAN FAMILY* TO

02:52:03  20   SAY THAT AS LONG AS THERE IS SOME SECULAR PURPOSE THAT THAT

21   WOULD SATISFY THE LEMON TEST.  WE CITED AUTHORITY TO THE

22   COURT THAT SAYS THAT THAT IS NOT THE STATE OF LAW, AT LEAST

23   WITH RESPECT TO THE SUPREME COURT.  AND I WOULD REFER YOUR

24   HONOR TO *WALLACE AND MCQUERRY* AND ALSO NINTH CIRCUIT CASES

02:52:21  25   THAT ACKNOWLEDGE THAT THE SUPREME COURT HAS ARTICULATED A

02:52:26  1    STANDARD THAT'S DIFFERENT THAN THAT.

        2         MY RECOLLECTION -- AND I HOPE I'M GETTING THE

        3    CASES RIGHT -- I THINK JUSTICE O'CONNOR IN THE CONCURRING OF

        4    *AMERICAN FAMILY* -- DID I GET THAT WRONG?

02:52:37  5         -- ACTUALLY NOTED THAT VERY THING, THAT IT CAN'T

        6    BE ANY.  SO WE THINK, YOUR HONOR, THAT THE CASES WE'VE CITED

        7    TO THE COURT SUGGEST THAT THE COURT LOOKS AT WHAT THE

        8    PRIMARY PURPOSE OF THE MOVE WAS AND IF THAT IS A NON-SECULAR

        9    PURPOSE, THEN THEY WOULD FIND THAT THAT VIOLATES THE LEMON

02:52:54 10    TEST.  AND SO WE JUST HAVE A DISAGREEMENT WITH RESPECT TO

       11    THE LAW ON THAT.

       12         THE COURT:  SO TELL ME WHAT FACTS YOU'VE EVEN

       13    ALLEGED TO REFLECT PRIMARY PURPOSE?  BECAUSE THE ONLY

       14    FACT -- THE ONLY EVIDENCE THAT I SAW OR FACTS THAT I SAW

02:53:08 15    ALLEGED -- AND, AGAIN, WE DO HAVE TO DEAL WITH *TWOMBLY* AND

       16    *IQBAL*, BECAUSE IF IT'S EQUALLY PLAUSIBLE THAT THERE'S NO

       17    LIABILITY, THEN THERE IS LIABILITY, THEN I HAVE A -- I HAVE

       18    A *TWOMBLY-IQBAL* ISSUE.  THERE HAS TO BE SOME LIKELIHOOD.

       19         SO WHAT I HAVE IN TERMS OF THE FACTS IS THAT THE

02:53:28 20    INDIVIDUAL DEFENDANT -- HOW DOES HE PRONOUNCE HIS NAME,

       21    BECAUSE I'LL BE PRONOUNCING IT THROUGHOUT --

       22         MR. DI CANIO:  WYGOT.

       23         THE COURT:  WYGOT.  ALL RIGHT.  THAT HE SAID THAT

       24    THEY SHOULD BE MOVED TO LIKE -- ESSENTIALLY, TO PLAY WITH

02:53:41 25    LIKE SCHOOLS.  NOW, PRESUMABLY, THERE'S NO FURTHER

02:53:46  1    EXPLANATION OF THAT IN THE COMPLAINT BY THE PLAINTIFFS OR

       2    ANYWHERE ELSE.  PRESUMABLY, YOU WOULD LIKE THE COURT TO

       3    INFER THAT MEANS "LIKE" AS IN "RELIGIOUSLY LIKE" AND EQUALLY

       4    PLAUSIBLE IS "LIKE" AS IN "COMPETITIVELY LIKE."  SO THERE'S

02:54:02  5    NOTHING ABOUT LANGUAGE ITSELF THAT ALLEGES ENOUGH FACTS TO

       6    STATE A CLAIM FOR RELIEF THAT'S PLAUSIBLE ON ITS FACE

       7    BECAUSE IF NON-LIABILITY IS EQUALLY PLAUSIBLE TO LIABILITY,

       8    YOU HAVEN'T GIVEN ANYTHING.  YOU HAVE GIVEN ME A VAGUE

       9    STATEMENT.

02:54:18  10         DO YOU THINK YOU HAVE SOMETHING YOU CAN PLEAD IN

      11    THAT REGARD?

      12         MR. DI CANIO:  I BELIEVE WE DO, YOUR HONOR, AND I

      13    BELIEVE WE HAVE.  IF YOU WILL JUST GIVE ME A FEW MINUTES TO

      14    LAY IT OUT FOR YOU.

02:54:26  15         IN OUR COMPLAINT, WE PLEAD THAT THE BLUE BOOK,

      16    WHICH IS THE CIS SOUTHERN SECTION GUIDELINES, SETS FORTH

      17    CERTAIN CRITERIA THAT HAS TO BE LOOKED AT BEFORE A SCHOOL IS

      18    MOVED TO ANOTHER AREA.  IT STARTS WITH THE PREFERENCE OF THE

      19    SCHOOL BECAUSE THE SCHOOL, PRESUMABLY, WOULD KNOW WHAT'S IN

02:54:43  20    THE BEST INTERESTS OF ITS KIDS.  SECOND, IT GOES TO

      21    GEOGRAPHY AND THIRD, IT GOES TO COMPETITIVE EQUITY.

      22         WE'VE ALLEGED THAT IN THIS ENTIRE PROCESS THAT THE

      23    CIS SOUTHERN SECTION HAS IGNORED ALL OF THOSE CRITERIA AND

      24    INSTEAD HAS THE PRIMARY MOTIVE OF MOVING -- OF TRYING TO

02:55:02  25    SEPARATE THE RELIGIOUS SCHOOLS FROM THE SECULAR SCHOOLS BY

02:55:08   1   MOVING ALL OF THE RELIGIOUS SCHOOLS OUT OF THEIR AREA AND

          2   FORCING THEM TO PLAY IN THE PAROCHIAL AREA, SOMETIMES VERY

          3   FAR DISTANCES FROM THE SCHOOL.

          4          NOW, THE REASON WHY WE SAY THAT IT WAS FOCUSED ON

02:55:18   5   THE RELIGIOUS SCHOOLS, YOUR HONOR, IS BECAUSE IN THIS LAST

          6   CYCLE, THE ONLY SCHOOLS THAT HAD BEEN MOVED ARE THE

          7   RELIGIOUS SCHOOLS.  WE PUT FORTH IN OUR PAPERS THAT THERE

          8   ARE SECULAR SCHOOLS THAT ARE FAR CLOSER TO THE PAROCHIAL

          9   AREA.  MAYBE A DOZEN FOR OAKS CHRISTIAN.  PROBABLY MORE FOR

02:55:37  10   SAINT BONAVENTURE AND THE OTHERS.  SO FOR THE PURPOSE OF

         11   WHERE WE ARE RIGHT NOW, WE BELIEVE THAT THAT WAS THE ONLY

         12   PURPOSE THAT THEY MOVED OAKS CHRISTIAN AND THE OTHER

         13   SCHOOLS.

         14          THE COURT:  LET ME ASK ON THAT -- ON THE POINT

02:55:50  15   THAT YOU JUST RAISED, IN OTHER PLACEMENT PERIODS, HAVE

         16   NONRELIGIOUS SCHOOLS BEEN MOVED FROM ONE GEOGRAPHIC AREA TO

         17   ANOTHER?

         18          MR. DI CANIO:  I THINK THE QUESTION IS:  HAVE

         19   NONRELIGIOUS SCHOOLS -- YEAH, I THINK AS PART OF THE

02:56:08  20   GEOGRAPHIC -- I'M SORRY, YOUR HONOR.

         21          AS PART OF THE AREA PLACEMENT, SCHOOLS ARE

         22   SOMETIMES MOVED.  BUT WHAT'S HAPPENED IN THE PAST IS NOT

         23   REALLY WHAT WE'RE TALKING ABOUT NOW.  WHAT WE'VE ALLEGED IS

         24   IN THAT IN THIS CYCLE, THE ONLY SCHOOLS THAT HAVE BEEN MOVED

02:56:22  25   HAVE BEEN THE RELIGIOUS SCHOOLS OUT OF THEIR AREA.  SAINT

02:56:25   1   BONAVENTURE HAS PLAYED IN THAT AREA FOR 50 YEARS -- ALMOST

           2   50 YEARS.  WE'VE PLAYED IN THIS AREA SINCE OUR INCEPTION AND

           3   HAVE BEEN MOVED TO THE PAROCHIAL AREA, DISREGARDING ALL OF

           4   THE AREA CRITERIA.  AND OUR POSITION HERE, YOUR HONOR, IS

02:56:38   5   THAT THERE WAS ONE REASON FOR THAT AND ONE REASON ALONE, AND

           6   THAT IS TO MOVE THE RELIGIOUS SCHOOLS AND HAVE THEM NOT PLAY

           7   THE SECULAR SCHOOLS, THEREBY DISADVANTAGING THE RELIGIOUS

           8   SCHOOLS BECAUSE THE BURDEN HAS BEEN IMPOSED ON US TO PLAY

           9   FURTHER FROM OUR GEOGRAPHIC CENTERS.  THE BURDEN HAS BEEN

02:56:55  10   IMPOSED ON US WITH RESPECT TO THE EDUCATION OF OUR STUDENTS

          11   AND THEREFORE, YOUR HONOR, THAT IS THE ALLEGATION WHERE WE

          12   SUGGEST THAT THEY HAVE SHOWED A PREFERENCE FOR THE SECULAR

          13   OVER -- PREFERENCE FOR THE RELIGIOUS -- I'M SORRY,

          14   PREFERENCE FOR THE SECULAR OVER THE RELIGIOUS.

02:57:10  15           NOW, YOUR HONOR, YOU REFERENCED A LETTER THAT WAS

          16   DONE EARLY ON AND I WOULD ASK THE COURT THAT YOU HAVE TO

          17   TAKE THAT LETTER IN CONTEXT.  THE COMPLETE RECORD OF THIS

          18   CASE WILL SHOW THAT OAKS CHRISTIAN HAD TRIED BEFORE THE

          19   HEARING ON THIS ISSUE BEFORE THE EXECUTIVE COMMITTEE TO GET

02:57:27  20   SOME EXPLANATION AS TO HOW THE CRITERIA WOULD APPLY TO US.

          21   BECAUSE AS WE SAW THE SITUATION, NONE OF THOSE CRITERIA

          22   REALLY WORKED FOR US.  WE THOUGHT WE WERE COMPETITIVE WHERE

          23   WE WERE.  THE DISTANCE CERTAINLY MAKING US PLAY FURTHER

          24   DOESN'T MAKE SENSE AND OUR PREFERENCE WAS TO STAY EXACTLY

02:57:45  25   WHERE WE WERE.  AND SO, WITHOUT ANY INFORMATION AS TO THE

*DEBORAH D. PARKER, U.S. COURT REPORTER*

02:57:48   1   REASON, WE SENT THE LETTER IN TRYING TO ENCOURAGE A

           2   DIALOGUE.  IT WASN'T UNTIL, YOUR HONOR, LATER HEARING WHICH

           3   HAPPENED LATER THAT WE REALIZED AFTER GOING TO THE HEARING

           4   AND AFTER SEEING THE PRESENTATIONS, NOT ONLY BY OAKS

02:58:01   5   CHRISTIAN, BUT BY SAINT BONAVENTURE, ST. LUCY'S AND DAMION'S

           6   THAT, IN FACT, IT WAS -- THE ONLY REASON THEY MOVED US, WAS

           7   BECAUSE WE WERE A RELIGIOUS SCHOOL.  WE ALSO DISCOVERED

           8   EVIDENCE THAT WE PUT FORTH IN OUR COMPLAINT WHERE MR. WYGOT

           9   MADE THAT STATEMENT ABOUT LIKE SCHOOLS PLAYING LIKE SCHOOLS.

02:58:18  10   SO, YOUR HONOR, WE RESPECTFULLY SUBMIT TO THE COURT THAT WE

          11   BELIEVE WE'VE ALLEGED SUFFICIENTLY AT THIS STAGE OF THE

          12   PROCEEDING THAT THE PRIMARY AND SOLE REASON WAS TO FAVOR THE

          13   SECULAR OVER THE RELIGIOUS.  WE HAVE A DISAGREEMENT ON THE

          14   LEMON TEST.  WE THINK WE'RE RIGHT ON THE LAW.  THE SUPREME

02:58:32  15   COURT CASES THAT WE HAVE ARTICULATED OR THAT WE HAVE

          16   PRESENTED TO THE COURT SAY THAT YOU CAN'T -- THE LEMON TEST

          17   IS NOT MET BY ANY POSSIBLE SECULAR PURPOSE.  IT HAS TO BE

          18   THE PREDOMINANT SECULAR PURPOSE.

          19          THE COURT:  THAT GOES TO THE FIRST PRONG.  THEN

02:58:47  20   THERE'S THE PRIMARY EFFECT PRONG, WHICH IS -- SO JUST MOVING

          21   ON TO THAT NOW -- THAT THE ACTION HAS TO HAVE THE PRIMARY

          22   EFFECT OF ADVANCING OR INHIBITING RELIGION.

          23          NOW, ARE YOU GOING TO TELL ME THAT -- HOW IS THE

          24   PRIMARY EFFECT BEING ADVANCING OR INHIBITING RELIGION?  IT

02:59:10  25   SEEMS TO ME THE PRIMARY EFFECT IS BURDENING PARENTS TO DRIVE

02:59:12  1    FURTHER AND STUDENTS TO HAVE TO DEAL WITH CLASS ISSUES.

2    THAT IS NOT A RELIGIOUS EFFECT.

3              MR. DI CANIO:  RESPECTFULLY, I DISAGREE,

4    YOUR HONOR.  SO THE CIF AND THE CIF SOUTHERN SECTION IS A

02:59:24  5    STATE ACTOR FOR THE PURPOSES OF THIS PROCEEDING.  AND WHEN

6    THEY DECIDE TO SHOW A PREFERENCE FOR THE SECULAR OVER THE

7    RELIGIOUS AND THEY OBJECTIVELY DEMONSTRATE THAT PREFERENCE

8    BY ONLY MOVING THE RELIGIOUS SCHOOLS REGARDLESS OF THE

9    CRITERIA THAT'S IN THEIR BLUE BOOK TO DISTANCES THAT ARE FAR

02:59:43  10   AND BURDENING US, IT CREATES THE OBJECTIVE APPEARANCE THAT

11   THEY ARE FAVORING THE SECULAR OVER THE RELIGIOUS.  WE

12   BELIEVE THE CASES THAT WE HAVE CITED, YOUR HONOR, ON THAT

13   POINT SAY THAT IS ENOUGH; THAT THE MERE ACTION, THE

14   OBJECTIVE ACTION OF SHOWING PREFERENCE FOR THE SECULAR OVER

02:59:59  15   THE RELIGIOUS, WHICH THEY HAVE DONE HERE BY THEIR AREA

16   PLACEMENT, CONSTITUTES INHIBITION OF OUR RELIGIOUS RIGHTS.

17             THE COURT:  THAT THE PRIMARY EFFECT INHIBITS

18   RELIGION?

19             MR. DI CANIO:  IT'S THEIR OBJECTIVE APPEARANCE.

03:00:15  20   BY BURDENING ONLY THE RELIGIOUS SCHOOLS BY FORCING US TO

21   MOVE TO THE PAROCHIAL AREA, THEY ARE OBJECTIVELY CREATING

22   THE APPEARANCE THAT THEY ARE FAVORING THE SECULAR OVER THE

23   RELIGIOUS.  THAT IN AND OF ITSELF -- BECAUSE OBVIOUSLY A

24   STATE ACTOR HAS TO MAINTAIN ABSOLUTE NEUTRALITY AS IT COMES

03:00:32  25   TO RELIGION -- THAT FAVORITISM OF THE SECULAR OVER THE

03:00:38  1    RELIGIOUS IS THE VIOLATION.  YOUR HONOR, I BELIEVE WE'VE

       2    CITED SOME CASE LAW.  I WOULD LIKE TO TELL YOUR HONOR THAT

       3    THE *AMERICAN FAMILY* AND *ROSENBERG* ARE CASES THAT SUPPORT OUR

       4    PROPOSITION ON THAT.

03:00:49  5            THE COURT:  ALL RIGHT.  SO LET ME ASK, THEN,

       6    YOU'VE REFERENCED, I THINK, THE CATHOLIC ATHLETIC

       7    ASSOCIATION.

       8            MR. DI CANIO:  YES, YOUR HONOR.

       9            THE COURT:  IN TERMS OF COMPULSION.  ARE SCHOOLS

03:01:08 10    IN THE PAROCHIAL AREA REQUIRED TO JOIN THE CATHOLIC ATHLETIC

      11    ASSOCIATION?

      12            MR. DI CANIO:  I BELIEVE THE ANSWER IS NO.  BUT I

      13    DEFER TO MY COLLEAGUES ON THAT.

      14            THE COURT:  AND HAVE YOU -- HAVE YOU SAID -- SO

03:01:25 15    YOU DON'T HAVE TO BE A MEMBER.  THERE ARE NONRELIGIOUS

      16    SCHOOLS IN THE PAROCHIAL AREA AS WELL, CORRECT?  I THINK THE

      17    PAPERS REFLECTED THAT THERE ARE AT LEAST TWO.

      18            MR. DI CANIO:  YES, YOUR HONOR.

      19            THE COURT:  AND THE PAPERS INDICATE THAT YOU WOULD

03:01:41 20    HAVE TO COMMUNICATE CATHOLIC PHILOSOPHY.  HOW DO YOU -- I

      21    DON'T KNOW WHERE THAT COMES FROM.  YOU DON'T HAVE TO BE A

      22    MEMBER, YOU'VE JUST INDICATED.  HAVE YOU SAID WE WON'T

      23    COMMUNICATE CATHOLIC PHILOSOPHY AND BEEN TOLD, *WELL, THEN,*

      24    *YOU'RE OUT*?

03:01:59 25            MR. DI CANIO:  NOW I THINK I REALIZE HOW I

03:02:00  1   MISUNDERSTOOD YOUR QUESTION.  SO WHEN OAKS CHRISTIAN GETS

2   PLACED IN THE PAROCHIAL AREA IN ORDER FOR US TO PLAY IN THE

3   PAROCHIAL AREA, BE A PART OF THE PAROCHIAL AREA, WE WILL BE

4   REQUIRED TO ADOPT THE GUIDELINES, I BELIEVE IT'S CALLED THE

03:02:15  5   GOLD BOOK, IN THE PAROCHIAL AREA.  AND WE WOULD HAVE TO

6   AGREE TO ABIDE BY ALL THE RULES AND REGULATIONS SET FORTH BY

7   THE CAA.  WE'D HAVE TO BECOME A MEMBER OF THE CAA, IF WE

8   WANT TO PLAY SPORTS THERE.

9        THE COURT:  AND WHAT -- HOW I DO KNOW THAT, OTHER

03:02:28  10  THAN YOU'RE TELLING ME THAT'S GOING TO HAPPEN?  HAVE YOU

11  SAID, *WE WON'T DO THAT*, AND THEY'VE SAID THEN, *SORRY.  IF*

12  *YOU DON'T PLAY BY OUR GUIDELINES, WHICH INCLUDES THE BURDEN*

13  *OF COMMUNICATING CATHOLIC PHILOSOPHY* -- WHICH IS WHAT YOU'VE

14  DESCRIBED AS THE BURDEN YOU WOULD FACE -- *YOU'RE GOING TO BE*

03:02:48  15  *KICKED OUT*?

16        HOW DO I KNOW THIS IS GOING TO HAPPEN?  ISN'T THAT

17  SPECULATION?

18        MR. DI CANIO:  WELL, YOUR HONOR, THE PAROCHIAL

19  AREA HAS BEEN AROUND FOR A VERY LONG TIME, AND THIS HAS BEEN

03:03:00  20  THE RULE FOR A LONG PERIOD OF TIME.  BUT I THINK OUR RIGHT

21  HERE THAT WE'RE ASSERTING IS AN ASSOCIATION RIGHT.  AND WHAT

22  WE'RE SAYING IS THAT WE'RE A CHRISTIAN SCHOOL AND THE

23  PAROCHIAL AREA IS GOVERNED BY THE CAA AND IS PART OF THE

24  RULES AND REGULATIONS OF THE CAA.  THE CAA REQUIRES THAT THE

03:03:18  25  SCHOOLS THAT ARE MEMBERS TO PROMOTE AND TO TEACH CATHOLIC

03:03:24  1  PHILOSOPHY AND CATHOLIC VIEWS --

2        THE COURT:  AREN'T YOU REQUIRED TO DO THAT?

3        MR. DI CANIO:  -- UNDER THE RULES, AS IT NOW

4  STANDS, THE ANSWER IS YES.  YOUR HONOR, WE'RE AT THE

03:03:35  5  PLEADING STAGE NOW.  AND WHAT YOUR HONOR IS SAYING IS, WELL,

6  LET'S ASSUME OAKS CHRISTIAN GOES --

7        THE COURT:  WELL, YOU'RE AT THE PLEADING STAGE

8  BECAUSE YOU'RE MAKING A CLAIM THAT YOU HAVE TO DO THAT.  AND

9  SO, I'M TRYING TO FIND OUT IF IT'S REALLY RIPE EVEN AS TO

03:03:48 10  THAT, BECAUSE YOU'RE SAYING THAT'S SOMETHING THAT WE THINK

11  IS GOING TO HAPPEN.

12        MR. DI CANIO:  NO, YOUR HONOR, NOT SOMETHING THAT

13  WE THINK IS GOING TO HAPPEN.  YOU'RE RAISING A QUESTION OF

14  FACT.  RIGHT NOW THE RULES OF THE PAROCHIAL AREA, THE CAA

03:03:59 15  REQUIRE THAT ALL MEMBER SCHOOLS ADOPT THE GOLD BOOK THAT

16  TEACH AND ACCEPT AND PROMOTE CATHOLIC VALUES AND CATHOLIC

17  IDEALS.  THAT IS THE RULE AS IT PRESENTLY STANDS.

18        THE COURT:  DO YOU HAVE TO BE A MEMBER?

19        MR. DI CANIO:  IF WE WANT TO PLAY IN THAT LEAGUE

03:04:17 20  AND PLAY SPORTS.  NOW, WE'VE BEEN SENT THERE BY THE CIF

21  SOUTHERN SECTION.  SO IF WE REFUSE TO DO THAT, THEN UNDER

22  THEIR RULES, WE CAN'T BE A MEMBER AND WE CAN'T PLAY SPORTS

23  THERE, AS I UNDERSTAND IT.

24        THE COURT:  ALL RIGHT.

03:04:38 25        MS. OXMAN:  YOUR HONOR, BRIEFLY WHILE WE'RE ON

03:04:39  1    THIS TOPIC.

2          THE COURT:  NO, I'LL GET BACK TO YOU.  JUST DON'T

3    FORGET.

4          MS. OXMAN:  UNDERSTOOD.  THANK YOU.

03:04:48  5          THE COURT:  SO DO YOU KNOW WHETHER THE

6    NON-PAROCHIAL, THE NONRELIGIOUS SCHOOLS ARE MEMBERS OF THE

7    CATHOLIC ATHLETIC ASSOCIATION?

8          MR. DI CANIO:  YOUR HONOR, I BELIEVE THAT THEY

9    ARE.  BUT, CERTAINLY, THEY HAVE THE ABILITY OR THE RIGHT TO

03:05:02 10    ACCEPT WHATEVER THE RULES AND REGULATIONS OF THE CAA ARE.

11          THE COURT:  BUT YOU UNDERSTAND WHAT I'M ASKING.

12    YOU'RE TELLING ME YOU HAVE TO.  AND I'M TRYING TO FIND OUT

13    IF YOU EVEN KNOW IF YOU HAVE TO.  PARTLY IT'S FACTUAL, BUT

14    PARTLY IT'S BECAUSE YOU'VE SAID, *THIS IS GOING TO HAPPEN IN*

03:05:17 15    *THE FUTURE.  IF WE ARE PLACED THERE, X, Y AND Z IS GOING TO*

16    *HAPPEN.*

17          I'M JUST WONDERING, HAS IT HAPPENED?  DO YOU

18    ACTUALLY HAVE A CLAIM?  *IT'S HAPPENED AND WE'RE GOING TO BE*

19    *KICKED OUT.*  THEY'VE SAID, *NO.*

03:05:30 20          HAVE YOU MET AND CONFERRED OVER THIS?  DO YOU KNOW

21    THIS?

22          IT WOULD JUST TO SEEM TO BE SOMETHING THAT --

23          MR. DI CANIO:  WELL, YOUR HONOR, I UNDERSTAND

24    WHERE YOU'RE COMING FROM.  THAT'S A QUESTION OF FACT THAT I

03:05:37 25    WOULD RESPECTFULLY SUBMIT IS NOT APPROPRIATE FOR THE MOTION

03:05:39 1   TO DISMISS STAGE, BECAUSE ALL WE'RE DEALING WITH HERE IS THE

2   FACT THAT OAKS CHRISTIAN HAS BEEN RELOCATED TO THE

3   PAROCHIAL --

4         THE COURT:  IT'S THE ELEVEN ISSUE, BECAUSE YOU'RE

03:05:50 5   MAKING THE ALLEGATION AS A FACTUAL MATTER THAT YOU HAVE TO

6   BE A MEMBER OF THE CAA IF YOU ARE MOVED AND YOU HAVE TO

7   ABIDE BY THEIR RULES AND YOU HAVE TO COMMUNICATE.  YOU'RE

8   TELLING ME THAT'S WHAT YOU'RE PUTTING IN YOUR COMPLAINT, AND

9   I'M ONLY SAYING IF YOU'RE TELLING ME NOW THAT I DON'T KNOW

03:06:06 10   IT'S TRUE OR NOT, I JUST PUT IT TO MY COMPLAINT AND WE HAVE

11   TO GO TO DISCOVERY OF FIND OUT IF WHAT I'M SAYING IS TRUE,

12   THAT I MIGHT HAVE A PROBLEM WITH.  I DON'T HAVE PROBLEM

13   WITH:  WE DON'T KNOW THESE FACTS AND WE CAN'T DISCOVER THEM

14   UNTIL WE HAVE FURTHER DISCOVERY, ET CETERA, BUT THAT'S A

03:06:20 15   DIFFERENT KIND OF THING IN MAKING A REPRESENTATION AS TO

16   WHAT YOU'RE GOING TO BE REQUIRED TO DO AND TO HAVE

17   INVESTIGATED THE FACTS UNDERLYING YOUR CLAIM.  THAT'S WHY

18   I'M ASKING THAT.  AND THAT IS APPROPRIATE AT A MOTION TO

19   DISMISS STAGE.

03:06:32 20         MR. DI CANIO:  I GUESS, YOUR HONOR, I'M SAYING, WE

21   ARE OPERATING UNDER THE RULES AS THEY'VE BEEN PRESENTED TO

22   US.  WELL, WE'VE NEVER BEEN A MEMBER OF THE PAROCHIAL AREA.

23   NOW THAT WE'VE BEEN SENT THERE BY THE CIS SOUTHERN SECTION,

24   WE LOOK AT THE RULES THAT APPLY TO THAT PAROCHIAL AREA AND

03:06:51 25   THOSE ARE PART OF THE RULES.  AND WE AS A CHRISTIAN SCHOOL

03:06:52  1  HAVE FREEDOM OF ASSOCIATION TO NOT TO BE FORCED TO ASSOCIATE

2  WITH ENTITIES, ORGANIZATIONS THAT VIEWS MAY DIFFER FROM OUR

3  OWN.  AND THE SUBSTANCE OF OUR FREE ASSOCIATION CLAIM IS

4  WE'RE BEING FORCED TO DO THAT.

03:07:08  5       NOW, I HEAR YOUR HONOR'S POINT.  YOU'RE SAYING TO

6  ME, COUNSEL, IF AT THE END OF THE DAY THEY SAY, *YOU KNOW*

7  *WHAT?  FOR OAKS CHRISTIAN, WE'LL JUST WAIVE THOSE*

8  *PROVISIONS.*  AT THE END OF THE DAY, YOUR HONOR, WE'RE STILL

9  BEING SUBJECT TO A LEAGUE THAT IS ADMINISTERED BY THE

03:07:25 10  ARCHDIOCESE, THE CATHOLIC ARCHDIOCESE, WHO HAS THE POWER TO

11  SET RULES AND REGULATIONS OF HOW THE SCHOOLS IN THAT LEAGUE

12  WILL OPERATE AND PLAY.  AND SO I STILL THINK IT DOESN'T SAVE

13  THE ISSUE, BUT I DO THINK, YOUR HONOR, FOR THE PURPOSES OF

14  PLEADING A COMPLAINT, WE HAVE PROPERLY PLED AT THIS POINT

03:07:44 15  THAT THAT'S WHAT WE WOULD BE OBLIGATED, BY THE OWN RULES OF

16  THE PAROCHIAL AREA.

17       THE COURT:  ALL RIGHT.  I THINK I'VE ASKED

18  QUESTIONS THAT I HAVE.

19       LET ME TURN, BRIEFLY, TO THE VIOLATION OF THE

03:08:00 20  CALIFORNIA EDUCATION CODE SECTION 33353(A).  AFTER *LU VERSUS*

21  *HAWAIIAN GARDENS CASINO,* DO YOU THINK YOU HAVE A PRIVATE

22  RIGHT OF ACTION?

23       BECAUSE I THINK LIKE THE *GEHRING* CASE THAT WAS

24  CITED, THE PRE-*LEW* APPELLATE CASE WHERE WE HAVE A CALIFORNIA

03:08:20 25  SUPREME COURT CASE ON POINT FROM 2010, THAT SEEMS TO SAY

03:08:26  1   THAT WE'RE NOT GOING TO IMPLY PRIVATE RIGHT OF ACTION WHERE

2   THERE'S NO INDICATION THAT THAT WAS THE LEGISLATIVE INTENT

3   AND THERE'S NOTHING IN THE STATUTE ITSELF TO SAY THAT.

4   MAYBE YOU COULD ADDRESS THAT FOR ME.

03:08:41  5   MR. DI CANIO:  I THINK THAT OUR ARGUMENT HERE IS

6   THAT, I THINK, *LU* WAS A VERY, VERY DIFFERENT SET OF FACTS

7   AND CIRCUMSTANCES.  IF YOU RECALL, *LU* WAS A CASE THAT DEALT

8   WITH POOLING OF TIPS AND THERE WAS SOME LEGISLATION THAT

9   RELATED TO THAT.  THE COURT'S OPINION IN *LU*, AS I READ IT,

03:08:59 10   YOUR HONOR, REALLY WAS PREMISED ON TWO THINGS:  THE FIRST

11   THING WAS THAT THERE IS A MANDATORY OBLIGATION FOR THE

12   DEPARTMENT OF INDUSTRIAL RELATIONS -- THAT WAS THE

13   ORGANIZATION THAT WAS CONTROLLING THAT ISSUE -- TO TAKE

14   ACTION WHEN THERE'S A VIOLATION OF THIS PARTICULAR STATUTE.

03:09:15 15   THAT IT WAS MANDATORY FOR THEM TO DO THAT.

16   SECOND, THE LU COURT ALSO DIDN'T FIND THAT IT WAS

17   AN INDIVIDUALIZED RIGHT.  AND ON THAT BASIS, THE LU COURT

18   DECLINED TO READ INTO THE STATUTE A PRIVATE RIGHT OF ACTION.

19   THE COURT:  THAT SEEMS LIKE A VERY -- IF YOU JUST

03:09:32 20   LOOK AT IT, IT'S THE RIGHT TO KEEP YOUR OWN TIPS.  IT SEEMS

21   JUST AS INDIVIDUAL AS ANYTHING IN THIS CASE.

22   MR. DI CANIO:  WELL, YOUR HONOR, I THINK, WHEN YOU

23   LOOK AT -- TO ME, I THINK, *GEHRING* IS A LITTLE BIT MORE

24   ANALOGOUS.  IN *GEHRING,* IT WAS VERY SIMILAR.  THE STATUTE

03:09:46 25   DID NOT EXPLICITLY CREATE A PRIVATE RIGHT OF ACTION.  THAT

03:09:50  1    WAS A SITUATION WHERE A LAW SCHOOL HAD TO REFUND FEES

2    BECAUSE THEY WERE NOT ACCREDITED.  BUT IN THOSE CASES, IT

3    WAS ALL THE SAME.  IT WAS A PRIVATE -- A RIGHT THAT WAS

4    PRIVATE TO THE INDIVIDUALS.  IT WAS A STATE ACTOR THAT DID

03:10:05  5    NOT HAVE MANDATORY OBLIGATION TO ENFORCE.  AND SO WHEN YOU

6    LOOK AT OAKS CHRISTIAN AND THE OTHERS -- DEPARTMENT OF

7    EDUCATION CLAIM -- AND YOU READ THE STATUTE, IT'S MAY.  IT'S

8    PERMISSIVE.  THE DEPARTMENT OF EDUCATION MAY SEEK TO ENFORCE

9    THAT.

03:10:21 10    WELL, IN THAT TYPE OF A SITUATION, IF INDIVIDUALS

11    ARE NOT GIVEN A PRIVATE RIGHT, THEN IT BECOMES ALMOST LIKE A

12    DEAD LETTER WHICH IS DISCUSSED IN SOME OF THE CASES.

13    THERE'S NO WAY TO ENFORCE A RIGHT THAT'S BEEN GIVEN.

14    THE COURT:  IN THOSE CASES WHERE IT'S DISCUSSED,

03:10:34 15    ISN'T IT THE CASE WHERE THERE'S NOT EVEN A STATE AGENCY

16    THAT'S AUTHORIZED TO ENFORCE.  HERE WE HAVE AN AGENCY -- IT

17    MAY NOT BE MANDATORY, BUT IT'S AUTHORIZED TO ENFORCE THAT

18    PROVISION.

19    MR. DI CANIO:  WELL, YOUR HONOR --

03:10:45 20    THE COURT:  THE DEPARTMENT OF EDUCATION, CORRECT?

21    MR. DI CANIO:  RIGHT.  BUT I STILL THINK, YOUR

22    HONOR, THAT IT IS A DISCRETIONARY THING FOR THE DEPARTMENT

23    OF EDUCATION.  THEY'RE NOT FORCED TO DO THAT.  IN THE CASES

24    THAT WE'VE CITED, THEY TALK ABOUT THAT AS BEING A FACTOR

03:10:59 25    THAT MITIGATES FOR IMPLYING A PRIVATE RIGHT OF ACTION.

03:11:03  1    BECAUSE IF THE STATE ACTOR DECIDES NOT TO ENGAGE, THEN THE

        2    INDIVIDUAL IS LEFT WITH NO REMEDY AND THAT WOULD RENDER THE

        3    STATUTE KIND OF MEANINGLESS.  I THINK THEY REFER TO IT AS A

        4    DEAD LETTER.

03:11:15  5             THE COURT:  THANK YOU.

        6             MR. DI CANIO:  THANK YOU, YOUR HONOR.

        7             THE COURT:  LET ME TURN TO OTHER PLAINTIFFS

        8    BEFORE -- AND THAT'S BEFORE I TURN BACK TO THE DEFENSE.  I

        9    HAVE SOME SPECIFIC FREE EXPRESSION QUESTIONS.

03:11:31 10             MR. PRATA:  GOOD AFTERNOON, YOUR HONOR.

       11             ONCE AGAIN, ROBERT PRATA.  I HAVE ST. LUCY'S, AND

       12    I WANT TO ADDRESS JUST A COUPLE OF POINTS THAT WERE RAISED

       13    HERE; THE FIRST BEING, NO SECULAR PURPOSE, THAT TEST BEING

       14    USED.  THE ONLY SCHOOLS THAT THEY MOVED WERE THE CHRISTIAN

03:11:47 15    SCHOOLS, THE CATHOLIC AND THE RELIGIOUS-BASED SCHOOLS.  THEY

       16    HAD ALL THESE OTHER SCHOOLS THAT WERE VERY TALENTED

       17    ATHLETICALLY THAT THEY COULD MOVE TO PLAY OTHER TALENTED

       18    SCHOOLS AND, YET, THEY CHOSE NOT TO.  AND I KNOW THERE WAS

       19    SOME QUESTION ABOUT FOOTBALL AND WHETHER THERE'S A SECULAR

03:12:04 20    PURPOSE THERE.  ST. LUCY'S DOESN'T HAVE A TEAM OBVIOUSLY.

       21    IT'S AN ALL-GIRL SCHOOL AND YET THEY MOVED ST. LUCY'S --

       22             THE COURT:  THAT'S NOT OBVIOUS.

       23             MR. PRATA:  UNLESS THEY CHANGED THEIR ROLES ON

       24    FOOTBALL IN THE SOUTHERN SECTION, RIGHT NOW, THE WAY IT

03:12:18 25    IS --

03:12:18  1         THE COURT:  IT'S NOT OBVIOUS TO ME.

        2         MR. PRATA:  EITHER WAY, YOUR HONOR, MY POINT IS

        3   THAT THERE REALLY WAS NO OTHER NON-SECULAR PURPOSE.

        4         THE COURT:  I'M GOING TO STOP YOU THERE, BECAUSE I

03:12:29  5   KNOW THAT WHEN I ASKED THIS QUESTION EARLIER THE ANSWER WAS:

        6   *WELL, WE'RE JUST LOOKING AT THIS PLACEMENT.*  BUT IF OVER

        7   TIME WHEN THERE ARE PLACEMENT DECISIONS MADE AND

        8   SOMETIMES -- PRESUMABLY, THERE HAVE BEEN SOME YEARS WHEN

        9   ONLY NONRELIGIOUS SCHOOLS HAVE BEEN MOVED AND SOME YEARS

03:12:48 10   MAYBE ONLY RELIGIOUS.  DO I JUST LOOK AT THIS PARTICULAR

       11   PLACEMENT AND SAY, *THIS MUST BE BECAUSE OF RELIGION BECAUSE*

       12   *THIS TIME ONLY RELIGIOUS SCHOOLS GOT MOVED*?  IS THAT

       13   SUFFICIENT TO TAKE THAT LENS?  AND MAYBE SO AT THE MOTION TO

       14   DISMISS STAGE, MAYBE THAT'S WHAT YOU'LL TELL ME, BUT THAT'S

03:13:06 15   MY QUESTION.

       16         MR. PRATA:  AND THAT'S WHERE I WAS GOING, YOUR

       17   HONOR, WITH THE 12(B)(6) HEARING THAT WE DON'T HAVE THESE

       18   FACTUAL, YOU KNOW, DECLARATIONS IN FRONT OF THE COURT AT

       19   THIS POINT IN TIME.  AND WHAT WE DO SEE, THOUGH, IS -- IT

03:13:20 20   WAS FINE FOR THEM TO MOVE VERY TALENTED PUBLIC SCHOOLS INTO

       21   OTHER DISTRICTS.  THEY COULD HAVE DONE THIS.  WE BELIEVE

       22   THAT THE REASON THEY DID THIS MOVE WAS THERE WAS NO OTHER

       23   SECULAR PURPOSE.  WHEN THEY WENT THROUGH THE CRITERIA, THEY

       24   DIDN'T APPLY THEIR OWN CRITERIA.  AND THAT SHOWS, AGAIN, AN

03:13:43 25   INFERENCE THAT THE UNDERLYING PURPOSE WAS TO MOVE RELIGIOUS

03:13:47  1  SCHOOLS.  AND BECAUSE THAT'S THEIR PURPOSE, THERE IS NO

2  OTHER SECULAR PURPOSE ON THAT.  AND, AGAIN, I THINK WE CAN

3  ADDRESS THOSE AT THE MOTION FOR SUMMARY JUDGMENT STAGE LATER

4  ON IN THE CASE, IF NECESSARY.

03:14:01  5  I ALSO WANTED TO POINT OUT THAT THERE WAS A

6  PRIMARY EFFECT OF INHIBITING RELIGION.  IF YOU MOVE SCHOOLS

7  AWAY FROM THEIR GEOGRAPHICAL AREAS TO WHERE THEY ARE, THE

8  IMMEDIATE IMPACT IS THAT YOU LOSE ENROLLMENT.

9  THE COURT:  THAT'S NOT A RELIGIOUS IMPACT, THOUGH.

03:14:22  10  THAT MAY BE AN ECONOMIC IMPACT ON THE SCHOOLS.  IT'S NOT A

11  RELIGIOUS IMPACT.  IT HAS TO IMPACT RELIGIOUS BELIEFS, NOT

12  THE SCHOOLS' ENROLLMENT.  I'M NOT SAYING THAT'S NOT

13  IMPORTANT, SIGNIFICANT.  AGAIN, YOU HAVE OTHER CLAIMS THAT

14  ARE NOT EVEN THE SUBJECT OF THIS MOTION -- WELL, I GUESS

03:14:39  15  EVERYTHING IS THE SUBJECT OF THE MOTION TO DISMISS, BUT I'VE

16  ALREADY INDICATED THAT I'M NOT PERSUADED AS TO THAT.  BUT

17  I'M JUST NOT SURE THAT YOU CAN SHOW THAT BECAUSE IT AFFECTS

18  US ECONOMICALLY THAT IT'S THEREFORE A RELIGIOUS EFFECT

19  BECAUSE WE'RE A RELIGIOUS INSTITUTION.  IF IT AFFECTS US

03:14:58  20  ECONOMICALLY, IT AFFECTS OUR RELIGION.

21  MR. PRATA:  NO, YOUR HONOR, THAT'S NOT WHAT I'M

22  SAYING AT ALL.  I'M NOT SAYING THAT BECAUSE KIDS LEAVE THE

23  SCHOOL THAT WE SUFFER AN ECONOMIC LOSS.  I'M SAYING THAT

24  THESE FAMILIES WHO HAVE DECIDED TO HAVE THEIR KIDS ATTEND A

03:15:12  25  RELIGIOUS SCHOOL NO LONGER HAVE THAT RELIGIOUS TRAINING,

03:15:17  1  BECAUSE THEY'VE PUT THE CHILD OR CHILDREN INTO A

2  NONRELIGIOUS SCHOOL WHICH IS WHAT CIF HAS MANDATED BY THIS

3  MOVE.  YOU HAVE A TALENTED PLAYER.  HE'S A FOOTBALL PLAYER.

4  HE ATTENDS ONE OF THE SCHOOLS AND ALL OF A SUDDEN YOU HEAR

03:15:34  5  THAT YOUR SCHOOL IS GOING TO HAVE TO PLAY GAMES 50, 75,

6  90 MILES AWAY BUT THE LOCAL PUBLIC DOESN'T.  THAT KID LEAVES

7  THE RELIGIOUS SCHOOL AND IS NOW ENROLLED AT THE PUBLIC

8  SCHOOL.  WE HAVE LOST A NUMBER OF PLAYERS.  WE LOST OUR

9  STARTING QUARTERBACK.  DAMION HIGH SCHOOL LOST THEIR

03:15:52  10  STARTING QUARTERBACK FOR THE LAST TWO YEARS THIS YEAR AFTER

11  THIS ANNOUNCEMENT.

12  SO WHETHER IT WAS INDICATIVE OF THIS ANNOUNCEMENT,

13  IT'S FACTUAL.  BUT THE POINT IS THAT THESE KIDS ARE NOT

14  ATTENDING THESE RELIGIOUS SCHOOLS.  AND BECAUSE THEY'RE NOT

03:16:08  15  ATTENDING THESE RELIGIOUS SCHOOLS, THE IMPACT HAS BEEN THE

16  EFFECT THAT THEY ARE NOT BEING ABLE TO BE -- NOT IN THE

17  ENVIRONMENT IN WHICH THEY CAN PRACTICE THEIR RELIGION.

18  THE COURT:  I THINK THAT SAYING THAT THAT'S A

19  PRIMARY EFFECT IS A VERY DIFFICULT HURDLE.  TO SAY THAT

03:16:24  20  BECAUSE THEY CHOOSE NOT TO GO TO THE SCHOOL BECAUSE THEY

21  WILL HAVE TO PLAY SPORTS FAR AWAY IS -- I DON'T THINK THAT

22  YOU'RE GOING TO BE ABLE TO MAKE THAT LINK TO RELIGION.  I

23  THINK THERE'S NO LIMITING PRINCIPLE.  THAT'S ONLY ONE OF

24  THREE PRONGS.  AND THIS IS A MULTI-PRONG TEST, SO IT'S NOT

03:16:44  25  LIKE YOU HAVE TO FIND EACH OF THESE TO SURVIVE.  BUT I JUST

03:16:48   1   THINK THAT'S A DIFFICULT ONE.  IT DOESN'T -- I DON'T THINK

           2   THAT YOU CAN SHOW THAT IT BURDENS YOUR FREE EXERCISE OF

           3   RELIGION AS AN INSTITUTION, WHICH IS -- BECAUSE YOU SAID

           4   YOU'RE NOT HERE ON BEHALF OF THE INDIVIDUALS -- THAT IT

03:17:04   5   BURDENS YOUR FREE EXERCISE OF RELIGION TO HAVE THE ATHLETIC

           6   COMPETITIONS IN A DIFFERENT GEOGRAPHIC REGION.  IT BURDENS

           7   OTHER THINGS.  IT BURDENS THE PARENTS, ET CETERA, IN

           8   TRAVELING.  BUT AS AN INSTITUTION, I THINK YOU'D HAVE

           9   TROUBLE SHOWING THAT.

03:17:21  10        LET ME SEE IF I HAD OTHER QUESTIONS.  I'M NOT SURE

          11   I HAVE ANY OTHER QUESTIONS AT THIS TIME.  BUT I'LL ALLOW YOU

          12   TO ANSWER ANYTHING THAT YOU FEEL YOU'D LIKE TO, OR ADDRESS

          13   ANYTHING YOU WOULD LIKE TO ADDRESS.

          14        MR. PRATA:  YES, JUST ONE MORE COMMENT, YOUR

03:17:40  15   HONOR.  OBVIOUSLY, WE'RE AT THE 12(B)(6) STAGE AND IT SEEMS

          16   LIKE WE'RE ENGAGING IN CLOSING ARGUMENT.

          17        MY POINT IS, IS THAT WE BELIEVE THAT WE'VE STATED

          18   FACTS SUFFICIENT TO STATE CLAIMS --

          19        THE COURT:  BUT SEE, NO, THAT'S EXACTLY WHAT I

03:17:52  20   HAVE TO DECIDE.  ON THE LEMON TEST, I HAVE TO DECIDE IF YOU

          21   HAVE ALLEGED AN EFFECT.  NOBODY IS DISAGREEING, FOR EXAMPLE,

          22   YOU'RE ALLEGING THAT THE EFFECT IS THAT STUDENTS ARE

          23   LEAVING -- BECAUSE I DIDN'T SEE ANYTHING ALLEGED AS TO WHAT

          24   THE RELIGIOUS EFFECT WAS.  YOU'RE ALLEGING THAT STUDENTS ARE

03:18:12  25   LEAVING BECAUSE THEY HAVE TO PLAY SPORTS FAR AWAY AND THAT

03:18:16   1  THAT IMPACTS THEIR EXERCISE OF RELIGION.  THAT'S AN ISSUE

2  THAT I CAN DECIDE AT A 12(B)(6).  I DON'T HAVE TO KNOW IS

3  THAT THE FACT OR IS THAT NOT THE FACT.  YOU ARE REPRESENTING

4  THAT'S THE FACT, AND I ACCEPT THAT.  THAT'S WHY IT'S NOT

03:18:30   5  LIKE A CLOSING ARGUMENT.  I'M TAKING THAT AT FACE VALUE.  MY

6  JOB IS TO DECIDE IF THAT IS ENOUGH.  THAT'S NOT THE ONLY

7  THING I'M DECIDING.  AND, CLEARLY, THE DEFENDANTS HAVE A

8  HURDLE HERE, BECAUSE THIS IS 12(B)(6).  ALL YOU HAVE TO DO

9  IS STATE A CLAIM THAT'S SUFFICIENT.  I OBVIOUSLY RECOGNIZE

03:18:48  10  THAT.

11          MR. PRATA:  AND WITH NOTHING ELSE, I'LL ALLOW

12  MICHELE FRIEND TO SAY A FEW COMMENTS.

13          MS. FRIEND:  I JUST HAD ONE POINT I WANTED TO ADD

14  TO THAT COMMENT WAS –– WE ALLEGE IN OUR COMPLAINT IN

03:19:10  15  PARAGRAPHS 26 AND 27, NOT JUST THE IMPACT, THE ECONOMIC

16  IMPACT OF STUDENTS LEAVING THE SCHOOL.  WHAT WE ALSO ALLEGE

17  IN THERE IS THE LIKELIHOOD –– IN PARTICULAR, WITH RESPECT TO

18  SAINT BONAVENTURE, THAT THE IMPACT OF THIS DECISION COULD

19  HAVE THE SERIOUS CONSEQUENCES OF POTENTIALLY CLOSING THE

03:19:33  20  SCHOOL.  THAT'S A DIFFERENT QUESTION THAN JUST LOSING MONEY

21  ON TUITION.  MAYBE WE HAVE TO CUT BACK PROGRAMS.  BUT THE

22  REALITY IS, THE MORE PARENTS THAT COME AND SAY *WE'RE PULLING*

23  *OUR KIDS OUT* AND COMPLAIN ABOUT THIS, WE RELY ON THAT

24  ENROLLMENT.  AND THAT SCHOOL, THAT'S ALL THE WAY UP IN

03:19:52  25  VENTURA AND HAS TO NOW TRAVEL 90 MILES, YOU KNOW.  IT

03:19:56  1  BECOMES A SITUATION WHERE THE QUALITY OF EDUCATION DECREASES

2  AND THERE IS A VERY HARSH REALITY THAT WE MAY HAVE TO CLOSE

3  THAT SCHOOL.  SO THAT'S WHY I THINK IT'S A LITTLE BIT MORE

4  FURTHER THAN JUST MAYBE WE'RE GOING TO LOSE SOME MONEY ON

03:20:14  5  THIS SITUATION.

6          THE COURT:  IT'S AN EXTREME ECONOMIC EFFECT.  I

7  DON'T EVEN MEAN TO MINIMIZE THE ECONOMIC EFFECT THAT WAS

8  IDENTIFIED EARLIER.  I'M JUST SAYING I'M NOT SURE THAT THAT

9  EFFECT IS ONE THAT CAN BE CONSIDERED AS AN EFFECT ON ONE'S

03:20:30 10  RELIGIOUS BELIEFS OR EXERCISE OF RELIGION OTHER THAN IT

11  MAKES IT REALLY DIFFICULT TO KEEP OUR SCHOOL OPEN.  AND I

12  UNDERSTAND THAT.  I'M JUST NOT GETTING THE LINK WITH THE

13  FIRST AMENDMENT AND THE FREE EXERCISE CLAIM.  IF YOU DON'T

14  STRUCTURE YOUR PROGRAM RELATING TO ATHLETICS TO KEEP US IN

03:20:50 15  THE SAME GEOGRAPHY, THEN WE GO THROUGH THE DOMINO EFFECT AND

16  EVENTUALLY WE'RE GOING TO CLOSE; THEREFORE, YOUR

17  RESTRUCTURING THE GEOGRAPHY MUST HAVE A PRIMARY EFFECT ON

18  RELIGION.  IT'S JUST HARD TO MAKE THAT ARGUMENT REGARDLESS

19  OF THE EXTREME EFFECT IT MIGHT HAVE.  NOT THAT I'M -- NOT

03:21:10 20  THAT I DON'T UNDERSTAND THAT EFFECT.  I JUST NEED TO MAKE

21  SURE THAT IT'S ACTUALLY ONE THAT'S COGNIZABLE AS A FIRST

22  AMENDMENT ISSUE.

23          MS. FRIEND:  THAT'S FAIR, YOUR HONOR.

24          AND, YOU KNOW, I'M WONDERING IF THE SITUATION

03:21:21 25  WOULD BE DIFFERENT IF WE WEREN'T TALKING ABOUT THE

03:21:23  1    ARCHDIOCESE.  SO, FOR EXAMPLE, IF YOU WERE TALKING ABOUT A

2    SCHOOL WHERE THAT WAS THE ONLY SCHOOL AND NOW ALL OF A

3    SUDDEN IT'S GOING TO BE SHUT, WOULD THAT BE A DIFFERENT

4    SCENARIO?

03:21:33  5         THE COURT:  I WASN'T EVEN THINKING IN TERMS OF THE

6    ARCHDIOCESE.  I REALLY WASN'T.  I DON'T THINK WE'RE DRAWING

7    THE LINES IN THE SAME WAY.  I'M NOT TALKING ABOUT HOW

8    EXTREME IS THE ECONOMIC EFFECT.  I'M TALKING ABOUT WHETHER

9    OR NOT THAT'S COGNIZABLE IF THE -- IF THE EFFECT IS --

03:21:51 10    SIMPLY, WE CAN'T ENTICE PEOPLE TO COME TO OUR SCHOOL BECAUSE

11    OF THIS AND IF THEY CAN'T COME TO OUR SCHOOL, THEN WE MAY

12    HAVE TO SHUT DOWN.  I'M TRYING TO MAKE SURE THAT THERE'S A

13    LINK THERE THAT IS ONE THAT'S COGNIZABLE.  IF THERE IS,

14    THEN --

03:22:07 15         MS. FRIEND:  WELL, IT PROHIBITS US FROM EDUCATING

16    PEOPLE ABOUT OUR RELIGION.  I MEAN, IT DOES.  CARRY THIS

17    DOWN THE ROAD, OKAY?  LET'S ASSUME THIS IS STEP ONE FOR CIS.

18    CARRY THIS DOWN THE ROAD AND THE MORE THAT THEY APPLY THIS

19    TO MORE SCHOOLS.  I MEAN, IT'S -- IT CAN BE UNENDING HOW

03:22:25 20    MANY SCHOOLS CLOSE OVER THIS.  I DON'T THINK THAT'S THEIR

21    GOAL.  BUT SOMETIMES CONSEQUENCES EXTEND FAR BEYOND WHAT

22    INTENTIONS MAY HAVE BEEN.  I DON'T KNOW.

23         SO I THINK IT'S VERY CRITICAL TO THINK ABOUT IF

24    YOU'RE GOING TO CLOSE A SCHOOL THAT REALLY IS INHIBITING A

03:22:44 25    RELIGIOUS INSTITUTION'S ABILITY TO TEACH ITS RELIGIOUS.

03:22:50  1          THE COURT:  OKAY.  KEEPING IN MIND THAT THEY'RE

       2  NOT CLOSING THE SCHOOL; THEY'RE CHANGING THE GEOGRAPHY FROM

       3  WHERE THE SPORTS ARE PLAYED.

       4          SO YOU'RE TALKING ABOUT THE EFFECT BEING THAT THEN

03:22:59  5  PARENTS WILL MAKE THE DECISION NOT TO HAVE THEIR KIDS THERE.

       6  THEN BASED ON THE PARENTS' DECISION NOT TO DO THAT, IT WILL

       7  AFFECT THE SCHOOL ECONOMICALLY.  IT MAY AFFECT IT SO

       8  SIGNIFICANTLY ECONOMICALLY BASED ON THE PARENTS' DECISIONS

       9  THAT IT WOULD HAVE THE EFFECT OF SHUTTING DOWN THE SCHOOL,

03:23:17 10  THAT EFFECT THEN PREVENTS THE INDIVIDUALS FROM EXERCISING

      11  THEIR FREE -- EXERCISE OF THEIR RELIGIOUS BECAUSE THEY NEED

      12  TO BE AT OUR SCHOOL TO EXERCISE IT.  I'M TRYING TO GET ALL

      13  STEPS YOU NEED TO GET THROUGH TO GET TO A FREE EXERCISE

      14  ISSUE, AND I'M HAVING TROUBLE GETTING THERE.  BUT I'M NOT

03:23:39 15  DECIDING AS I SIT HERE TODAY.  I'M TAKING THIS UNDER

      16  SUBMISSION.  I'M CONTINUING TO HEAR ARGUMENT ON IT.

      17          ANYTHING FURTHER?

      18          MS. FRIEND:  NO, THANK YOU, YOUR HONOR.

      19          MR. DI CANIO:  YOUR HONOR, IF I MAY, I NEED TO

03:23:50 20  CORRECT SOMETHING I SAID.

      21          THE COURT:  CERTAINLY.

      22          MR. DI CANIO:  I WAS MISTAKEN AND MY COLLEAGUE

      23  CLARIFIED.

      24          YOU ASKED ME ABOUT THE CAA AND WHETHER -- IF OAKS

03:23:59 25  CHRISTIAN, IF THEY DIDN'T ACCEPT THE CATHOLIC TEACHINGS AND

03:24:06  1    AGREE TO DO ALL THOSE THINGS, COULD IT STILL BE A MEMBER AND

2    I THINK I TOLD YOU, *NO, THEY COULD NOT*, AND I WAS WRONG

3    ABOUT THAT.

4         IT WAS CLARIFIED TO ME THAT OAKS CHRISTIAN CAN

03:24:12  5    STILL BE A MEMBER OF THE LEAGUE, BUT WHAT WE WOULD BE

6    PROHIBITED FROM DOING -- AND I'M GOING TO LOOK AT MY

7    COLLEAGUES TO MAKE SURE I DON'T SCREW THIS UP TWICE -- IS

8    THAT WE WOULD BE PRECLUDED FROM ANY TYPE OF GOVERNANCE OR

9    ANY VOTE, ANY SAY IN HOW THE LEAGUE IS RUN AND, IN EFFECT,

03:24:30 10    REALLY HAVE NO REPRESENTATION AND NO SAY IN WHAT HAPPENS TO

11    US AS A SCHOOL IN THE LEAGUE.

12         BUT I APOLOGIZE, YOUR HONOR, BECAUSE I MISSPOKE.

13         THE COURT:  THANK YOU.

14         LET ME HEAR FROM THE DEFENDANT, AGAIN; AND I'M

03:24:43 15    GOING TO START WITH A QUESTION.  YOU MAY STEP UP TO THE

16    PODIUM.

17         MS. OXMAN:  YOUR HONOR, I'M GOING TO ADDRESS YOU

18    FROM HERE, IF THAT'S OKAY.

19         I HAVE A COUPLE OF --

03:25:03 20         THE COURT:  YOU MIGHT AS WELL GET USED TO IT NOW;

21    BECAUSE IF YOU'RE IN TRIAL, THAT'S WHERE YOU'LL BE.

22         MY FIRST QUESTION IS THIS:  WHY HAS THE CIF

23    DELEGATED TO THE CATHOLIC ATHLETIC ASSOCIATION

24    ADMINISTRATION OF A PARTICULAR AREA?  HOW DOES THAT NOT

03:25:22 25    AMOUNT TO EXCESSIVE ENTANGLEMENT?  AND THE FACT THAT I HAVE

03:25:27 1   TO ASK WHY AND ALL THOSE QUESTIONS AND WE'RE AT 12(B)(6)

2   MEANS THAT'S A TOUGH ONE FOR YOU.

3        MS. OXMAN:  WELL, YOUR HONOR, I THINK IT'S NOT SO

4   MUCH ABOUT WHY.  I THINK IT'S ABOUT WHAT THE ALLEGATIONS SAY

03:25:38 5   IN THE COMPLAINT AND WHAT OAKS CHRISTIAN ALLEGES IN THE

6   COMPLAINTS -- AND IT'S PARAGRAPH 21 -- IS THAT CIF HAS

7   DELEGATED CERTAIN ADMINISTRATIVE DUTIES TO THE CAA AND CIF

8   SOUTHERN SECTION RETAINS JURISDICTION OVER THE AREA.  SO

9   WHILE COUNSEL HAS STATED THAT THEY WILL NOT HAVE A VOICE IF

03:25:55 10  THEY DON'T JOIN THE CAA AND CANNOT PARTICIPATE IN

11  GOVERNANCE, THAT'S NOT ACTUALLY CORRECT.  BECAUSE PLAINTIFF,

12  OAKS CHRISTIAN, AS A MEMBER OF CIF LEAGUES HAS

13  REPRESENTATION AND IS ELECTING MEMBERS TO THE CIF SOUTHERN

14  SECTION COUNCIL AND THE EXECUTIVE COMMITTEE WHICH ARE

03:26:12 15  OVERSEEING THAT AREA AND ALL THE AREAS WITHIN THE CIF

16  SOUTHERN SECTION.  THE FACT THAT OAKS CHRISTIAN SUBJECTIVELY

17  FEELS OR THINKS IT SHOULD JOIN THE CAA IS NOT SUFFICIENT TO

18  ESTABLISH THIS EXCESSIVE ENTANGLEMENT.

19        *AND I WOULD LIKE TO EMPHASIZE THAT THE REQUIREMENT*

03:26:27 20  *IS THAT THE ENTANGLEMENT BE EXCESSIVE.  AND IF YOU LOOK AT*

21  *LARKIN VERSUS GRENDEL'S DEN, INC.*, WHICH IS CITED BY

22  PLAINTIFF, THE SUPREME COURT EXPRESSLY NOTES THAT SOME

23  INCIDENTAL ENTANGLEMENT IS INEVITABLE IN A MODERN SOCIETY,

24  AND SIMPLY BECAUSE THE CATHOLIC ATHLETIC ASSOCIATION MAY BE

03:26:47 25  PROMULGATING POLICIES THAT, FOR EXAMPLE, GOOD SPORTSMANSHIP

03:26:52  1  THAT, PERHAPS, COINCIDES WITH CATHOLIC DOCTRINE IN NOT

2  ASKING THE SCHOOLS IN THAT AREA TO ADHERE TO THAT DOES NOT

3  ESTABLISH THAT THERE IS ENTANGLEMENT.  AND THAT'S WHAT THE

4  COURT NOTED, THE SUPREME COURT NOTED IN *HARRIS VERUS MC RAE*,

03:27:03  5  IS THAT, FOR EXAMPLE, JUDEA-CHRISTIAN ETHIC TO PROHIBIT

6  THEFT, AND THAT DOESN'T PRECLUDE THE UNITED STATES

7  GOVERNMENT FROM ENACTING A STATUTE THAT WOULD CRIMINALIZE

8  THEFT, IS THAT THE ESTABLISHMENT CLAUSE VIOLATION.  AND SO,

9  HERE THE FACT THAT THE CATHOLIC ATHLETIC ASSOCIATION IS

03:27:20  10  INVOLVED IN ADMINISTRATIVE DUTIES WHICH PLAINTIFF CONCEDES

11  DOES NOT ESTABLISH THE EXCESSIVE ENTANGLEMENT.

12         THE COURT:  ALL RIGHT.  ANYTHING FURTHER FROM THE

13  DEFENSE AT TIME?

14         MS. OXMAN:  YES, I WOULD LIKE TO ADDRESS SEVERAL

03:27:31  15  OF THE ARGUMENTS AND POINTS THAT WERE MADE.  AND TO POINT

16  OUT THAT, I THINK -- WELL, WE'VE BEEN EXPLORING THE ISSUES

17  IN THIS HEARING.  I THINK COUNSEL WAS TESTIFYING IN A NUMBER

18  OF THEIR ARGUMENTS AND WERE TALKING ABOUT THE GOLD BOOK

19  WITHIN THE CATHOLIC ATHLETIC ASSOCIATION AND THE AREA THAT

03:27:44  20  IS NOWHERE IN THE COMPLAINT AT ALL.  AND WE'RE TALKING ABOUT

21  QUARTERBACKS --

22         THE COURT:  THEY DON'T HAVE TO PUT EVERYTHING IN

23  THE COMPLAINT.  THEY DON'T HAVE TO -- THAT'S KIND OF THEIR

24  POINT.  THEY MAY HAVE FACTS.  THEY DON'T HAVE TO PUT THEM

03:27:57  25  ALL IN THE COMPLAINT.  IT'S NOTICE PLEADING UNDER RULE 8.

03:28:00  1    AND THE QUESTION JUST IS WHETHER THE ALLEGATIONS ARE

        2    SUFFICIENT EVEN -- THEY MAY BE SOMEWHAT VAGUE.  BUT IF THEY

        3    ARE SUFFICIENT FACTUALLY TO STATE A PLAUSIBLE CLAIM, SO

        4    THAT'S WHAT I'M LOOKING AT AND THAT'S WHY I'M ASKING

03:28:19  5    QUESTIONS ABOUT -- THAT I THINK GO TO THE ALLEGATIONS.

        6            MS. OXMAN:  I THINK THE COURT HAS IT RIGHT WITH

        7    RESPECT TO THE PRIMARY EFFECT THAT, YOU KNOW, THEY'RE

        8    TALKING ABOUT THERE IS A GEOGRAPHIC BURDEN OR AN ECONOMIC

        9    EFFECT, OR A GEOGRAPHIC EFFECT.

03:28:33 10            AND WITH RESPECT TO PURPOSE, I THINK THAT -- WHILE

       11    THERE MAY BE AN ALLEGATION THAT THERE WAS, YOU KNOW, AN

       12    IMPERMISSIBLE PURPOSE OR THAT THEY WERE TARGETING OR SHOWING

       13    A PREFERENCE FOR NONRELIGIOUS SCHOOLS, IF YOU LOOK AT THE

       14    CASES WHEN YOU'RE TALKING ABOUT PREFERENCE, THAT GOES TO

03:28:47 15    PRIMARY EFFECT.  AND I THINK THEY'RE CONFLATING THE TWO OF

       16    LOOKING AT SECULAR PURPOSE VERSUS PRIMARY EFFECT.  AND IN

       17    RULING ON THE MOTIONS, THE COURT CAN AND HAS AN OBLIGATION

       18    TO TAKE JUDICIAL NOTICE.  THERE WAS NO DISPUTE ABOUT PUTTING

       19    THE BLUE BOOK BEFORE THE COURT.  AND THE SECULAR PURPOSE

03:29:02 20    HERE IS THAT THE CIF IS REQUIRED TO FOLLOW THE BLUE BOOK AND

       21    THE BLUE BOOK MANDATES THAT THE AREA PLACEMENT PROCESS BE

       22    CONDUCTED EVERY FOUR YEARS.  AND THAT'S WHAT THEY DID AND

       23    THAT'S HOW THESE DECISIONS WERE MADE.

       24            AND THE COURT GOT IT RIGHT EARLIER WHEN THEY

03:29:15 25    COMMENTED THAT *AMERICAN FAMILY* REQUIRES THE COURT TO ACCEPT

03:29:18   1   ANY SECULAR PURPOSE OFFERED AND THAT THE COURT MUST NOT

2   QUESTION IF THE MEANS WERE CORRECT OR EVEN REASONABLE.  AND

3   THAT'S WHAT THE *AMERICAN FAMILY* CASE ALSO -- COURT ALSO

4   SAID.

03:29:29   5         I WOULD LIKE TO BRIEFLY TOUCH ON THE WAIVER

6   ARGUMENT.  COUNSEL FOR OAKS STARTED HIS ARGUMENT BY SAYING

7   *YOU KNOW, WHAT THIS IS REALLY ABOUT IS THE BEST INTEREST OF*

8   *THE KIDS.*

9         AND I THINK IT'S IMPORTANT TO LOOK AT THE WAIVER

03:29:40  10   ARGUMENT AND REVISIT IT.  AND UNDERSTANDING THAT, THE REASON

11   THAT PROVISION IS IN PLACE IS WE'RE TALKING ABOUT AN

12   ORGANIZATION THAT OVERSEES ATHLETICS IN 585 SCHOOLS.  AND

13   THE WAIVER PROVISION HAS STRONG POLICY REASONS BEHIND IT AND

14   SHOULD BE ENFORCED BECAUSE OF THOSE POLICY REASONS.  IF A

03:29:59  15   SCHOOL COULD ALWAYS FILE SUIT EVERY TIME THERE WAS A

16   DISAGREEMENT OR A STUDENT FELT THEY DIDN'T GET PUT IN THE

17   RIGHT LEAGUE OR IN THE RIGHT TEAM, THE CIF SOUTHERN SECTION

18   WOULD NOT BE ABLE TO FUNCTION.  THE NINTH CIRCUIT, IN

19   *LEONARD VERSUS CLARK*, DISCUSSED THAT BEING ABLE TO

03:30:14  20   ADMINISTER AN ORGANIZATION IS A SUFFICIENT POLICY REASON TO

21   ENFORCE THAT WAIVER PROVISION.  ADDITIONALLY, IF YOU'RE

22   TALKING ABOUT LITIGATION COSTS, THE CAA AND SOUTHERN SECTION

23   COULD NOT PROVIDE ATHLETICS TO ANY STUDENT IN SOUTHERN

24   CALIFORNIA IF THEY WERE ALWAYS IN COURT AND ALWAYS FILING

03:30:29  25   SUIT.

03:30:29  1            AND CONTRARY TO PLAINTIFF'S CLAIMS, THIS IS NOT A

       2  CASE ABOUT THAT CIF SOUTHERN SECTION HAS UNFETTERED

       3  DISCUSSION.  THERE IS A SYSTEM SET UP IN PLACE.  IT'S A

       4  DEMOCRATIC SYSTEM AND THERE ARE OTHER REMEDIES THAT

03:30:41  5  PLAINTIFFS MAY PURSUE, IF THEY ARE NOT HAPPY WITH A DECISION

       6  MADE AT THE EXECUTIVE COMMITTEE.  THEY WERE ABLE TO APPEAL

       7  THAT DECISION.  THEY COULD HAVE GONE TO CALIFORNIA

       8  INTERSCHOLASTIC FEDERATION, A STATE ORGANIZATION, OR THE

       9  DEPARTMENT OF EDUCATION.  SO IT'S NOT AS IF THERE WERE NO

03:30:54 10  OTHER REMEDIES, BUT THEY'RE CONFINING THAT DECISION WITHIN

      11  THE ORGANIZATION SO THAT THE ORGANIZATION CAN CONTINUE TO

      12  FUNCTION AND REALLY DO WHAT IT IS SUPPOSED TO DO, WHICH IS

      13  PROVIDE ATHLETIC OPPORTUNITIES TO STUDENTS IN SOUTHERN

      14  CALIFORNIA.

03:31:07 15            THE COURT:  IN THE PAST, HAS THE CIF PROVIDED A

      16  NEUTRAL APPELLATE -- I'M TRYING TO FIND THE LANGUAGE HERE.

      17  I'VE GOT IT SOMEWHERE.

      18            MS. OXMAN:  NEUTRAL FINAL APPEALS BODY.

      19            THE COURT:  YES.  A NEUTRAL FINAL APPEALS BODY

03:31:23 20  OTHER THAN WHAT IT PROVIDED THIS TIME?

      21            MS. OXMAN:  ON THIS --

      22            THE COURT:  NEUTRAL FINAL APPEALS PANEL, AN

      23  ARBITRATION PANEL, SOMETHING LIKE THAT?

      24            MS. OXMAN:  ON THIS POINT, YOUR HONOR, I THINK

03:31:28 25  IT'S IMPORTANT TO DISTINGUISH AMONGST THE PARTIES.

03:31:31  1      THE COURT:  ANSWER MY QUESTION FIRST AND THEN YOU

2  CAN DISTINGUISH AND DO WHATEVER YOU LIKE.

3      MS. OXMAN:  CALIFORNIA INTERSCHOLASTIC FEDERATION

4  IS A STATE ORGANIZATION.  IT IS MY UNDERSTANDING THAT THEY

03:31:38  5  AT ONE POINT PROVIDED A FINAL APPEALS BODY WHICH IS HOW WE

6  READ SECTION 33353 AS APPLYING TO THE STATE ENTITY AND NOT

7  TO THE DEFENDANT CIF SOUTHERN SECTION.

8      THE COURT:  ALL RIGHT.  I THINK I'VE HAD MY

9  QUESTIONS ANSWERED.

03:31:56 10      MR. DI CANIO:  YOUR HONOR, COULD I JUST RESPOND

11  TO -- IF YOU GIVE ME ONE MINUTE, I JUST WANT TO RESPOND TO

12  SOMETHING SHE SAID, BECAUSE IT REALLY --

13      THE COURT:  ON WHAT SUBJECT?  I NEED TO KNOW

14  WHETHER YOU'VE ALREADY SPOKEN ON IT.

03:32:04 15      MR. DI CANIO:  WELL, COUNSEL SAID IS THAT WE COULD

16  HAVE APPLIED FOR AN APPEAL TO THE CIF STATE.  WE COULD HAVE

17  APPLIED BEYOND ON THAT.  THE TRUTH OF THE MATTER IS WE ASKED

18  FOR A HEARING WITH THE CIF STATE AND THEY TOLD US NO.  WE

19  SENT A LETTER TO THE DEPARTMENT OF EDUCATION BEFORE WE FILED

03:32:18 20  THE SUIT SAYING, *WE WOULD LIKE TO BE HEARD ON THIS.*  IT'S

21  BEEN TWO MONTHS AND STILL HAVEN'T RECEIVED AN ANSWER.

22      THE COURT:  AND I THINK THAT WAS IN YOUR PAPERS,

23  SO -- AND YOU MAY HAVE A SEAT.

24      I WILL BE RULING ON THE MOTION TO DISMISS.  I HAVE

03:32:31 25  TO TELL YOU THAT IN SOME WAYS -- AND YOU SHOULDN'T TAKE

03:32:37  1  ANYTHING FROM THE QUESTIONS THAT I ASKED, AS POINTED AS THEY

2  MAY BE DIRECTED TOWARDS THE PLAINTIFFS.  WHEN YOU SAID THE

3  COURT GOT IT RIGHT, OFTENTIMES I'M JUST ASKING A QUESTION.

4  I'M JUST PLAYING DEVIL'S ADVOCATE.  I HAVE NOT -- I WILL

03:32:50  5  TELL YOU, I HAVE NOT REACHED A CONCLUSION ON THIS.  BUT WHAT

6  I'M GOING TO SAY IS THAT IN SOME WAYS THIS DOES FEEL A BIT

7  LIKE A SQUARE PEG IN A ROUND HOLE OR VICE VERSA, AND I

8  WONDER IF THERE HAS BEEN A TRUE ATTEMPT TO RESOLVE THIS

9  THROUGH WHATEVER MECHANISMS THERE CAN BE.

03:33:14  10       IF YOU HAVEN'T RECEIVED A RESPONSE BACK IN TWO

11  MONTHS, MY QUESTION THEN TO THE DEFENDANTS WOULD BE, REALLY,

12  YOU'D RATHER BE HERE THAN TRY TO EXPEDITE THAT PROCESS?  SEE

13  IF THERE'S ANYTHING ELSE.  I'M NOT GOING TO -- EVENTUALLY, I

14  WILL MAKE YOU GO TO SETTLEMENT CONFERENCE, OR DISCUSSIONS,

03:33:33  15  OR MEDIATION, BECAUSE I DO IN EVERY SINGLE CASE.  IT'S A

16  REQUIREMENT BEFORE I GIVE YOU ANY TRIAL TIME, EVEN SOMETIMES

17  RULE ON A DISPOSITIVE MOTION.  BUT THIS CASE TO ME CRIES OUT

18  TO BE -- AS ONE THAT SHOULD HAVE AN ATTEMPT AT AN EARLY

19  RESOLUTION, IF POSSIBLE, BECAUSE THE LIVES OF ALL OF THESE

03:33:55  20  KIDS, YOU KNOW, ARE AT STAKE, AND IT'S COMING UP PRETTY

21  SOON.  EVEN THOUGH IT SEEMS LIKE IT MAY BE A LITTLE WAYS

22  AWAY, YOU KNOW HOW OUR WHEELS TURN.  THEY GRIND SLOWLY, ONLY

23  BECAUSE I HAVE HUNDREDS OF FILES THAT ARE FATTER THAN THIS.

24       AND SO, WHAT I AM SUGGESTING NOW AND WILL BE

03:34:16  25  ORDERING AT SOME POINT IS THAT YOU -- YOU'RE ALL HERE, RIGHT

*DEBORAH D. PARKER, U.S. COURT REPORTER*

03:34:21  1    NOW AND YOU'RE FACE-TO-FACE AND THAT YOU TRY TO SEE IF THERE

       2    IS ANY RESOLUTION TO THIS, ANY FURTHER PROCESS THAT CAN BE

       3    ATTEMPTED SO THAT AT LEAST YOU'LL FEEL LIKE WE'VE MADE IT

       4    THROUGH WHATEVER THOSE FINAL STAGES ARE INTERNALLY AND WE

03:34:43  5    HAVE NO CHOICE BUT TO GO TO FEDERAL COURT AND TRY TO HAVE

       6    THIS JUDGE RESOLVE THE MATTER FOR ME; AND IF NOT, THEN A

       7    JURY OF 12 -- AT LEAST AS TO WHATEVER CLAIMS TO WHICH YOU

       8    WOULD BE ENTITLED TO A JURY.

       9          THAT IS MY SUGGESTION.  THIS IS JUST ONE OF THOSE

03:35:10  10    CASES THAT APPEARS TO ME TO BE ONE THAT GOOD PEOPLE CAN WORK

      11    ON.  IT'S JUST UNLIKE MANY OF THE CASES THAT I HAVE IN THAT

      12    REGARD.  AS FAR APART AS YOU ARE IN THE BRIEFS, THAT DOES

      13    NOT ALWAYS INDICATE THAT A CASE IS NOT RESOLVABLE OR

      14    AMENABLE TO RESOLUTION OUTSIDE OF THE COURT.

03:35:35  15          THAT SAID, I WILL BE RULING ON THIS.  IT MAY BE A

      16    LITTLE WHILE FOR THE RULING.  I'M NOT SAYING AGES AND AGES,

      17    BUT I WANT TO GO THROUGH IT CAREFULLY.  AND SO, YOU

      18    SHOULDN'T EXPECT TO SEE ANYTHING POSTED ON THE DOCKET THIS

      19    COMING WEEK.

03:35:50  20          THAT'S ALL.  I JUST WANTED TO ENCOURAGE YOU IN

      21    THAT REGARD, SO --

      22          MR. DI CANIO:  THANK YOU, YOUR HONOR.

      23          THE CLERK:  ALL RISE.

      24    *(AT 3:35 P.M., PROCEEDINGS WERE ADJOURNED.)*

      25                -OOO-

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1                       CERTIFICATE

 2           I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

 3   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

 4   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

 5   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

 6   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

 7   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9   DATE:  OCTOBER 16, 2013

10

11

12                      _____

13                      DEBORAH D. PARKER, OFFICIAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```